# SUPREME COURT,

STATE OF KANSAS.

## JANUARY TERM, 1895.

PRESENT:

Hon. ALBERT H HORTON,* Chief Justice.
Hon. WILLIAM A. JOHNSTON, } Associate Justices.
Hon. STEPHEN H. ALLEN,

JOHN F. TAYLOR v. JOSEPH BLEAKLEY.

1. ELECTIONS AND VOTERS—*Ballots*—*Absolute Secrecy.* The legislature, within the terms of the constitution, may adopt such reasonable regulations and restrictions for the exercise of the elective franchise as may be deemed necessary to prevent intimidation, fraud, bribery, or other corrupt practices, provided that the voting be by ballot, and that the person casting the vote may do so in absolute secrecy.

2. MARKING BALLOTS—*Mandatory Provision.* The following provision of § 25, chapter 78, Laws of 1893, "If a voter . . . fails to mark the ballot as required by other section of this act . . . his ballot shall not be counted for such office," construed in connection with the other sections of that act, is mandatory.

3. UNMARKED BALLOTS, *Not Counted.* Under the provisions of §§ 22 and 25 of chapter 78, Laws of 1893, commonly known as the "Australian-ballot law," ballots not marked with a cross (X), substantially in or upon the designated square or place, should not be counted.

---

* Resigned; succeeded by Hon. DAVID MARTIN, of Atchison, who was appointed April 30, 1895.

1—55 KAS.

Taylor v. Bleakley.

*Error from Leavenworth District Court.*

At the general election in the fall of 1893, Joseph Bleakley was the republican candidate for the office of county treasurer of Leavenworth county, and John F. Taylor the democratic candidate for that office. From the canvass made by the county clerk and commissioners of the returns of the election for the office it appears that Bleakley and Taylor had an equal number of votes, and a higher number of votes than any other person. The commissioners proceeded to determine by lot which of those two persons should be elected. Lots were drawn, which resulted in awarding the certificate of election to Taylor. Thereupon Bleakley instituted proceedings in contest before a contest court duly organized for that purpose and composed of Probate Judge Hawn, and Judges H. W. Ide and T. A. Hurd, and the county clerk, as clerk of that court. The election was the first one held in Leavenworth county under chapter 78 of the Laws of 1893, commonly known as the "Australian-ballot Law," and the contest court in counting the ballots construed that law. Before the official ballots were counted by the contest court arguments were made before the court regarding the proper interpretation of said chapter 78.

The first decision of the contest court concerning the law was announced by Hon. H. W. Ide. It was as follows:

" It is difficult to lay down many rules in advance by which it shall be determined whether disputed ballots should be counted or not. But two or three general principles seem to me to be so clear that I have no hesitancy in giving my assent at this time. The present election law provides a new system of voting calculated to secure privacy, personal inde-

pendence, and freedom from party or individual sur-
veillance, and, in this respect, tends to promote an
independence and free exercise of the elective fran-
chise.    It provides that all the tickets shall be printed
on one sheet of paper, and the ticket of each party
shall be in a column by itself, with a proper heading
including its political character.   At the end of each
name a space is provided for in the shape of a square,
within which the voter is to indicate his choice of
candidates by making a mark in the shape of a ×,
and the making of any mark on his ballot by which
his ticket can be identified is especially prohibited.
The principal questions discussed by counsel, which
we are asked to decide, are :   May the mark prescribed
by the statute be in any other place than in the square
at the left of the candidate's name, or in any other
style or form than the cross described by the statute?
In my opinion this mark must be substantially where
the statute says it shall be.   It will not be valid to
put it at the head of the ticket, nor at the right of the
candidate's name, nor above or below it, or across its
face.    Yet I do not think it must be all within the
square, but some portion of it must be.   If it is all
outside of the square, although only by a small dis-
tance, it cannot be counted.   As to the form of the
mark required by law some little allowance must be
made for the want of practice with a pen or pencil,
and carelessness or haste of the voter, or for poor
sight due to age, and to the trembling hand of en-
feebled nerves, but the mark must conform substan-
tially to that designated in the law.   Difficulty may
and probably will be encountered when we come to
the inspection of the ballots in determining whether
a ballot is or is not in its proper place or is in the
proper form.   But this is a difficulty inherent in the
very nature of the case, and cannot be arrived at by
general rules, but each case will have to be determined
by itself, under the principles herein enunciated.''

After a part of the official ballots were examined by
the contest court, it appears that there was a rehearing
allowed concerning the construction of the law, and

"thereupon the court decided that it would go back to the beginning of the count in the contest, and go over all of said ballots according to a different rule from that heretofore governing them, which was done." And the count then proceeded, with the result that the contest court decided that John F. Taylor was duly elected on the 7th of November, 1893, as treasurer of Leavenworth county. The entire number of official ballots cast at the election were disposed of by the contest court as follows :

```
Counted for Bleakley without objection....................... 2,057
Counted for Bleakley against Taylor's objection ............. 695
Counted for Taylor without objection........................ 2,196
Counted for Taylor against Bleakley's objection.............. 579
Ballots objected to, but not counted for either party.......... 24
Ballots not indicating a vote for either party................ 1,206
```

    Total .................................................. 6,757

By the count of that court, according to the rule of construction finally adopted, Bleakley received 2,752 votes and Taylor 2,775 votes, a plurality of 23 votes for the latter. Bleakley prosecuted his petition in error to the district court, which reversed the ruling of the contest court and decided that Bleakley was duly elected treasurer of Leavenworth county on the 7th of November, 1893. The district judge (Hon. L. A. MYERS), at the time of rendering judgment in favor of Bleakley against Taylor, handed down the following opinion :

"I have given a careful consideration and, I trust, due weight to the many authorities cited, as well as to the very able and exhaustive arguments of counsel in this case. I have endeavored to fully consider the rights of the voter, as well as the rights of the party to this contention. Fully appreciating the great interests at·stake, it is a relief to know, as stated by counsel, that no matter what the result here, the supreme court will be called upon to give its unerring judgment upon the points involved. There can be no

question but that our Australian-ballot law was copied bodily, with but few immaterial alterations, from the Iowa law passed a year earlier. The supreme court of that state, in a well-considered opinion, (*Whittam v. Zahorik*, 59 N. W. Rep. 57,) has given its interpretation of that law. I believe that interpretation is the right one. To hold otherwise would, in my judgment, defeat the main purpose of the law itself. And this view is, as appears to me, upheld in the main by the weight of decisions in other states. Our own supreme court, in *Boyd v. Mills*, [53 Kas. 594,] while holding that a mistake on the part of the officer furnishing the ballots should not operate to the prejudice of the honest voter, go further, and say they do not decide that any of the provisions of the law may be disregarded, or that any officer may escape liability to punishment for violating any of its provisions. Our supreme court, following an unbroken line of decisions, draw a marked distinction between a disregard of the law on the part of the voter and an honest mistake on the part of an election officer. Construing the different sections of the act prescribing the form of ballot to be prepared and furnished, the directions to be printed on such ballot for the guidance of the voter, 'that he shall make a cross-mark in the square to the left of the name of the candidate for whom he wishes to vote,' together with the plain provision in section 22, that the voter, 'on receipt of his ballot, shall prepare the same by making in the appropriate margin or place a cross to the left of the name of the candidate of his choice,' I can come to no other conclusion than that the law means that the cross must be made substantially in or upon the square. The further provision in section 25, that 'if the voter fails to mark the ballot, as required by other sections of this act, his ballot shall not be counted,' makes this requirement mandatory.

"As to the other points raised: 1. I think the law is constitutional, notwithstanding the forcible and ingenious argument of counsel for the contestee. 2. The official ballots put in evidence fully prove, if

proof were necessary, that the contestor was regularly nominated, and that his name was properly on the ballots. 3. The act of a judge of the election in writing his name instead of his initials upon the ballot would not invalidate such ballot, unless done at the request of the voter, or as an identifying or distinguishing mark. 4. Ballots voted at one precinct which had been prepared for another would not be void, where the same had been prepared and furnished by the proper officer by mistake and without collusion or fraud.

"In arriving at these conclusions, I am not unmindful of the high character and great ability of the gentlemen composing the contest court; and from their earlier rulings, I venture to believe that if they had had the Iowa decision before them, they would have concurred in the views here expressed. The judgment of the contest court is reversed."

Section 14 of said chapter 78, Laws of 1893, reads in part:

"The party appellation or title shall be printed in capital letters, not less than one-fourth of an inch in height, and immediately below such party appellation or title shall be printed the following statement: Electors will make a cross-mark, thus ( × ), in the square at the left of the name of the candidate for whom they wish to vote."

Section 15 has the following:

"For all elections to which this act applies, the county clerks in their respective counties shall have charge of the printing of the ballots for all general elections, and shall furnish them to the judges of such elections."

The official ballots furnished to the voters of Leavenworth county, at the November election for 1893, had the following words plainly printed at the top of each ballot: "Electors will make a cross-mark, thus ( × ), in the square at the left of the name of the

candidate for whom they wish to vote.'' At the left of the name of each candidate appointed on the official ballot was a square (□) for the electors to mark a cross, thus (×), therein.

The first part of section 22 is as follows :

'' On receipt of his ballot, the voter shall forthwith, and without leaving the inclosed place, retire alone to one of the voting booths so provided, and shall prepare his ballot by making in the appropriate margin or place a cross (×) to the left of the name of the candidate of his choice for each office to be filled, or by writing in the name of the candidate of his choice in a blank space on said ticket, making a cross (×) to the left thereof.''

The first part of § 25 reads :

'' If a voter marks more names than there are persons to be elected to an office, or fails to mark the ballot as required by other section of this act, or if for any reason it is impossible to determine the voter's choice for an office to be filled, his ballot shall not be counted for such office.''

Section 23 reads, in part, thus :

''Any voter who may declare, upon oath, that he cannot read the English language, or that, by reason of any physical disability, he is unable to mark his ballot, shall, upon request, be assisted in marking his ballot by two of the election officers of different political parties, to be selected from the judges and clerks of the precinct in which they are to act, to be designated by the judges of election of each precinct at the opening of the polls. Such officer shall mark the ballot as directed by the voter, and shall thereafter give no information regarding the same.''

Taylor excepted to the rulings of the court, and brings the case here.

*Robert Crozier, Fenlon & Fenlon, J. H. Atwood,* and
*L. B. & S. E. Wheat,* for plaintiff in error.

*Lucien Baker, W. A. Porter,* and *Willam C. Hook,* for
defendant in error.

The opinion of the court was delivered by

HORTON, C. J. : The contention in this case is over
the construction of the following provision of § 25,
chapter 78, laws of 1893 : "If a voter . . . fails
to mark the ballot as required by other section of this
act, . . . his ballot shall not be counted for such
office," in connection with the other sections of, that
act. The contest court found that Taylor had re-
ceived 2,775 votes, and Bleakley 2,752, giving Taylor
a majority of 23 votes. There were sufficient ballots
counted by the contest court for Taylor, after deduct-
ing similar ballots counted for Bleakley, where the
cross (×) or mark of the voter was entirely outside of
the designated square or place at the left of his name,
to change the result declared by that court. The dis-
trict court ruled that the requirement of § 25 was
mandatory, and therefore refused to count the ballots
in which the cross (×) or the mark of the voter was
entirely outside of the designated place. This ruling
is complained of.

It is insisted that the provision is directory only,
and that, if the purpose of the voter can be ascer-
tained with reasonable certainty from the ballot cast
by him, effect should be given to it. Unquestionably,
prior to the passage of chapter 78 by the legisla-
ture of 1893, the rule that the intent of the voter, as
evidenced by his ballot, is controlling in the count
thereof, was, by a long course of judicial determina-
tion, firmly imbedded in the jurisprudence of this state.

(*Jones v. The State*, 1 Kas. 273; *Gilleland v. Schuyler*, 9 id. 569; *Wilds v. State Board*, 50 id. 147.) But the legislature of 1893 adopted what is known as the "Australian-ballot system." The enactment of that statute was designed to inaugurate an important departure from the mode of voting and counting votes which had existed in this state prior to its passage. If the legislature intended to say that a ballot which had failed to accord with certain specifically enumerated requirements on the part of the voter could not be counted, the purpose of the legislature, irrespective of all considerations as to the intent or effect of such failure, if not unconstitutional, cannot be disregarded by courts.

3. Unmarked ballots, not counted.

If the statute is harsh in its terms, the remedy is with the legislature. Our statute was taken almost bodily from the Iowa law. The supreme court of that state has recently passed upon the pivotal question involved in this case. (*Whittam v. Zahorik*, 59 N. W. Rep. 57.) That court ruled : "That ballots not marked with a cross in any circle or square should not be counted." That decision was followed in *The State v. Hagen*, 60 N. W. Rep. (Iowa) 108. See, also, the following cases : *Lindstrom v. Board of Canvassers*, 54 N. W. Rep. 280; *The State, ex rel., v. Russell*, 51 id. (Neb.) 465; *Parvin v. Wimberg*, 30 N. E. Rep. (Ind.) 790; *Curran v. Clayton*, 86 Me. 42; *Bechtel v. Albin*, 33 N. E. Rep. (Ind.) 967; *Sego v. Stoddard*, 36 id. (Ind.) 204; *In re Vote Marks*, 21 Atl. Rep. (R. I.) 962; *In re Ballot Marks*, 27 id. (R. I.) 608; *Fields v. Osborne*, 60 Conn. 544. In *Parvin v. Wimberg*, supra, it is observed :

"If a statute expressly declares any particular act to be essential to the validity of an election, or that its omission shall render the election void, the courts,

whose duty it is to enforce the law as they find it, must so hold, whether the particular act in question goes to the merits or affects the result of the election or not; for such a statute is mandatory, and the court cannot enter into the question of its policy. In this instance it has declared that the mode by which the elector shall express his choice shall be by stamping certain designated squares on the ballot. There is nothing unreasonable in the requirement, and it is simple and easily understood. Furthermore, if he is illiterate, or is in doubt, the law makes ample provision for his aid. If he does not choose to indicate his choice in the manner prescribed by law, he cannot complain if his ballot is not counted. (*Kirk v. Rhoads*, 46 Cal. 399.) If we hold this statute to be directory only, and not mandatory, we are left entirely without any fixed rule by which the officers of election are to be guided in counting the ballots.''

In *Curran v. Clayton*, supra, it was decided that under the statute of Maine giving the voter a clear opportunity to designate by a cross-mark (×) his choice of candidates, the place and method of marking the ballot being regulated and defined in the statute, ballots defectively and illegally marked should be rejected.

The provision of chapter 78, requiring the voter to make a cross-mark (×) to the left of the name of the candidate of his choice for the office to be filled, was construed by the house of representatives of the state at its late session. In the contest brought by W. M. Glenn *v.* C. E. Wightman, claiming to have been legally elected representative from Greeley county, a written report was filed by the election committee. From that report we take the following excerpt:

''After a very careful consideration of the 'Australian-ballot law,' and an exhaustive examination of the authorities of this and other states construing its provisions, your committee has reached the unanimous

conclusion that none of the ballots [those in dispute] should have been counted for either candidate. The great innovation upon the prior law made by the Australian law is that the intention of the voter shall be ascertained by an application to the ballot of the directions contained in the statute, and the provisions of our statute directing the manner in which the voter shall express his choice are mandatory. Another object of the law is to prevent the putting upon the ballot by the voter or any other person any mark save and except the cross in the proper space which will designate that ballot from any other ballot cast. Should the door be open to permit the counting of ballots containing any other than the marks permitted by the statute, it would enable persons who had bargained for votes to agree upon a distinguishing mark whereby it could be determined, by a mere inspection of the ballot, whether or not the voter had carried out his part of the contract, thereby thwarting one of the main objects of the law."

2. Marking ballots— mandatory provision.

The report of the election committee was adopted by the house without dissent, the membership of which contained over 40 persons who were members of the legislature of 1893 which enacted chapter 78.

In *Boyd v. Mills*, 53 Kas. 594, where all the ballots used by the voters of one township were printed on colored paper instead of white, this court ruled that the ballots were properly counted, but remarked, "they were furnished by the judges to the voters, and were the only ballots furnished to or used by any voter at the voting-place, and therefore the color of the ballots was not sufficient to prevent the counting thereof;" and added:

"The secrecy of the ballot has been in nowise impaired; the voters themselves have manifested no disposition to disregard the law, and it may be fairly inferred that the use of the colored ballots was an

honest mistake on the part of the judges of the election. Had a part of the ballots been white and a part colored, so as to afford some grounds for identification of the votes cast by the individual electors, a different question would be presented.

"In considering the statute, we are to keep steadily in mind the evident purpose of the legislature in its enactment. It is plain that among the most prominent ends sought to be attained was that of absolute secrecy. Any mark or distinguishing feature on the ballots which would enable a person other than the voter himself to identify the ballot and find out how the elector had voted was intended to be strictly prohibited.

"By this decision we do not intend to say that any of the provisions of the law may be disregarded, or that any officer may escape liability to punishment for violating any of its provisions."

As sustaining the final ruling of the contest court, our attention is called to *Coleman v. Gernet*, 14 Pa. County Ct. Rep. 578 ; *Johnson v. Board of Canvassers*, 59 N. W. Rep. (Mich.) 412 ; *The State, ex rel., v. Russell*, 51 id. 465 ; *Spurgin v. Thompson*, 55 id. (Neb.) 297. The Coleman case was decided by an inferior court, but follows the decision of *Woodward v. Sarsons*, L. R. 10 C. P. 733. In that case, the statute referred to differs from ours. Lord Coleridge, in the opinion, said :

"The second section enacts as to what the voter shall do ; that 'the voter, having secretly marked his vote on the paper, and folded it up so as to conceal his vote, shall place it in an inclosed box.' This is all that is said in the body of the act about what the voter shall do with the ballot paper. That which is absolute, therefore, is, that the voter shall mark his paper secretly. How he shall mark it is in the directory part of the statute."

The cases of *The State, ex rel., v. Russell*, supra, and

*Spurgin v. Thompson*, supra, were decided by the supreme court of Nebraska. The statute of that state does not provide, if the ballot is not marked as required, it shall not be counted. That statute has the provision that —

" When a ballot is sufficiently plain to gather therefrom a part of the voter's intention, that it shall be the duty of the judges of election to count such part."

Post, J., in referring to that provision, observed :

"It may be, as contended by respondents' counsel, that the proviso in the last section was intended to apply only to ballots otherwise regular, but on which the voter has failed, through negligence, illiteracy or other cause, to clearly express his intention as to every office named thereon. The inference is strong, however, from the language of the several sections to which reference has been made, that the legislature, by declaring a limited number of provisions to be mandatory, and a compliance therewith essential to a legal ballot, intended the other provisions as directory only."

*Johnson v. Board of Canvassers* ( Mich.), supra, gives some support to the rule adopted by the contest court in finally counting the ballots, but even that case differs from this. In that case, the official ballot contained the name of but one candidate for each office. A number of ballots voted were not marked in any manner. The court ruled that, in the absence of names of opposing candidates on the ballot, those referred to should be counted. An examination of the various decisions construing the Australian-ballot law, adopted by so many states of the union, shows that the current and great weight of authority in this country supports the construction adopted by the Iowa and Maine courts.

It is next insisted if the provisions of §§ 22 and 25,

referred to, are mandatory, that the statute is in conflict with § 1, article 5 of the constitution, which ordains that "all elections by the people shall be by ballot, and all elections by the legislature shall be *viva voce.*" It is conceded that the word "ballot" means "a bit of paper having printed .or written thereon the designation of an office, and the name of a person to fill it, and that the person casting it has a right to do so in absolute secrecy." The cardinal features of chapter 78 are two : First, an arrangement for polling by which compulsory secrecy of voting is secured ; second, an official ballot containing the names of all candidates, printed and distributed under official authority. The act compels a vote by ballot, and absolute secrecy. The marking of the vote in seclusion, and in such a uniform way as not to be readily used for identification, reaches effectively a great class of evils, including violence, intimidation, bribery and corrupt practices, dictation by employers or organizations, the fear of ridicule and dislike, or of social or commercial injury, all coercive and improper influence of every sort depending on a knowledge of the voter's political action. Voting according to a bargain or understanding is especially aimed at. No man has ever placed his money corruptly without satisfying himself that the vote was cast according to the agreement, or, in a phrase which has become only too common in elections, without proof that "the goods were delivered ; " and when there is to be no proof by any distinguishing mark, sign, or otherwise, but the word of the bribetaker (who may have received thrice the sum to vote for the briber's opponent), it is idle to place any trust in such a use of money. (Wigmore, Australian Ballot System, 52.) A ballot ought to be cast by

the voter intelligently and thoughtfully. If so cast, there is no trouble in complying with the provisions of chapter 78. If a person is illiterate or physically disabled, he may have assistants to mark his ballot. No one is disfranchised by the act, nor are the provisions concerning the marking of the ballot difficult to understand. The legislature, within the terms of the constitution, may adopt such reasonable regulations and restrictions for the exercise of the elective franchise as may be deemed necessary to prevent intimidation, bribery, and fraud, providing the voting be by ballot, and the person casting the ballot may do so in secrecy. (*Curran v. Clayton,* supra; *Whittam v. Zahorik,* supra; *Parvin v. Wimberg,* supra; *Boyd v. Mills,* 53 Kas. 594; *Blair v. Ridgley,* 41 Mo. 63.) We do not think that the provisions of chapter 78 referred to; even if mandatory, conflict in any way with the constitution.

1. Elections and voters— ballots— absolute secrecy.

Finally, it is insisted that the district court, after reaching the conclusion it did concerning the counting of the ballots, should have sent the case back to the contest court for a new trial, and not rendered final judgment. The case as presented to this court is upon admitted facts. The ballots in dispute are truly copied in the record. The case is before us in the nature of an agreed statement of facts. This court is able from the examination of the admitted facts to direct the judgment. There appears no necessity for reconvening the contest court.

The counting of the ballots by the district court is approved and the judgment of the court is affirmed.

All the Justices concurring.