No. 28,702.

The State of Kansas, ex rel. William A. Smith, Attorney-general, and Arthur J. Mellott, County Attorney of Wyandotte County, *Appellee*, v. William Beggs, County Clerk of Wyandotte County, *Appellant*.

(271 Pac. 400.)

Opinion filed November 3, 1928.

*Roland Boynton,* assistant attorney-general, and *J. E. McFadden,* of Kansas City, for the appellant; *O. Q. Claflin,* of Kansas City, of counsel.

*William A. Smith,* attorney-general, *W. C. Ralston,* assistant attorney-general, and *Arthur J. Mellott,* county attorney, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an appeal from the decision of the district court of Wyandotte county, division No. 1, involving the constitutionality of section 4 of chapter 203 of the Laws of 1927, which is as follows:

"Any elector who is otherwise eligible to vote at any general election, but who has not previously voted at a primary election in that precinct and declared his party affiliations for registration as herein provided, shall be required, before being given a ballot for such general election, to declare his party affiliation, a record of which party affiliation shall be made by the election board, and returned to the county clerk with the poll books, and such party affiliation shall be entered on the poll books herein provided for, to be used at subsequent primary elections."

The action is one for an injunction, brought by the state of Kansas on relation of the attorney-general of Kansas and the county attorney of Wyandotte county to enjoin and restrain the county clerk of that county from enforcing the provisions of chapter 203 in connection with the approaching general election on November 6, 1928, in Wyandotte county, because that section is unconstitutional. The petition was duly verified and the answer was a general denial. The trial court held with the plaintiff that section 4 was unconstitutional, and issued its order enjoining and restraining the county clerk from furnishing the so-called party affiliation books to the judges and clerks of election, and from furnishing election instructions directing and requiring the judges and clerks to compel any of the voters at

the general election to declare their party affiliations before being given ballots. From this ruling, order and judgment the county clerk appeals, maintaining that section 4 is not unconstitutional nor in violation of any of three provisions of the state constitution urged by the appellee and held by the trial court.

Appellee insists that section 4 is in violation of section 16 of article 2 of the constitution, for the reason that it contains more than one subject and matters not clearly expressed in the title, the additional subject matter being that which concerns the general election. The title of the act is as follows:

"An act relating to the primary elections, providing for the declaration, enrolling and listing of party affiliation of voters and the manner and means of the change of party affiliations."

It is admitted that sections 1, 2 and 3 concern the primary election, and a careful reading of section 4 shows that it, too, concerns the primary election and that alone. It states the information to be obtained at the general election is to be used at subsequent primary elections. The fact that it arranges to acquire that information at the general election and by the assistance of the election officers at the general election, does not make the act one concerning the general election. In the recent case of *State, ex rel., v. Board of Education,* 122 Kan. 701, 253 Pac. 251, it was held an act authorizing the attachment of adjacent territory to cities of the second class for school purposes, which further covers matters of taxation and administrative details, does not contain two unrelated subjects and is not in violation of this section of the constitution. In the case of *Swader v. Flour Mills Co.,* 103 Kan. 378, 176 Pac. 143, it was held:

"The title, 'An act to provide compensation for workmen injured in certain hazardous industries,' is broad enough to include compensation for dependents of a workman fatally injured, and the latter topic is germane and pertinent to the main subject covered by the act." (Syl. ¶ 1.)

In *Philpin v. McCarty,* 24 Kan. 393, Justice Brewer quoted with approval from an Iowa case concerning this section of the constitution:

"The intent of this provision of the constitution was to prevent the union, in the same act, of incongruous matters, and of objects having no connection, no relation." (p. 403.)

The rule seems to be that there is no violation of this provision if the subject of the legislation is assimilated to the other provisions of the act and is germane thereto. The getting of further information at the general election for use of succeeding primaries is certainly

germane to the subject of the primary. This identical question was decided in *State v. Blaisdell*, 18 N. D. 55, by the supreme court of North Dakota under similar constitutional requirement, where a section of the primary law provided for settling certain unfinished primary matters and selections at the general election. There the court said:

"In fact what takes place at the general election is merely a continuation of the party caucus or primary for the purpose of determining the choice of the two candidates receiving the highest vote at the June primary. The fact that it is conducted at the same time and through the same election machinery, as the general election is conducted does not make it a part of the general election. This was done for convenience and to save expense. It is merely the consummation of an incomplete party nomination. It is therefore strictly germane to the subject expressed in the title." (p. 65. See, also, *State v. Scott*, 109 Kan. 166, 197 Pac. 1089; *City of Wichita v. Sedgwick County*, 110 Kan. 471, 204 Pac. 693; *State v. Bateman*, 110 Kan. 546, 204 Pac. 682.)

It is next contended that section 4 is in violation of section 1 of article 4 of the constitution, which provides that "all elections by the people shall be by ballot," which implies secrecy of voting and secures to the voter absolute secrecy as to how he voted. It is argued that by being required to divulge his party affiliation before being given a ballot it naturally follows that he intends to vote for the candidates whose names appear on his party ticket and he thus in effect reveals his choice of candidates. This is not a necessary sequence, especially under the present liberal method of what we call scratching tickets. The voter may possibly be embarrassed, confused, and even humiliated by making the announcement of his party affiliation before his close and personal friends of different political persuasion, but this is surely not within the provision affording secrecy. The secrecy required is as to his vote for candidates, not as to political leaning or party affiliation. Again, the secrecy is not as to how he intends to vote or is inclined to vote, but how he has in fact voted. We are not persuaded that the divulgence of party affiliation immediately prior to voting violates the secrecy of the ballot guaranteed by the constitution, and therefore conclude that section 4 is not for this reason unconstitutional.

The appellee contends that section 4 imposes an additional qualification upon electors otherwise qualified to vote at a general election by requiring them to declare their party affiliation before being given ballots at the general election if they have not already made such declaration, and for this reason the section is unconstitutional. The section of the constitution fixing the qualifications of voters is section 1, article 5, and is as follows:

"Every citizen of the United States of the age of twenty-one years and upwards—who shall have resided in Kansas six months next preceding any election, and in the township or ward in which he or she offers to vote at least thirty days next preceding such election—shall be deemed a qualified elector."

Appellant maintains that the part of section 4 under consideration is not a requirement or something necessary to be complied with before being given a ballot, but more nearly a request for some information, which the voter may give or not at his pleasure, and receive a ballot regardless of the nature or character of his compliance or declaration. In other words, if he has no party affiliation or is disinclined to give such he shall be given a ballot just the same. We fear this is not giving the words used in the section their usual and ordinary meaning. It states that he "shall be required, before being given a ballot for such general election, to declare his party affiliation." We think a refusal or declination on his part for any reason would under this language justify the election officers in refusing to give him a ballot; and, indeed, if the act is valid they should not give him a ballot unless he does make the declaration required. It would very much better have covered the ground as explained by the appellant if it had said the election officers before giving him a ballot should request him to make a declaration as to his party affiliation. It is not necessary in this case to determine what kind of a declaration will answer the requirement. Possibly "independent" or the name of a party not known in Kansas politics might suffice, but one thing is certain—that is, he is required to make a declaration as to his party affiliation. A declaration of party affiliation is not one of the qualifications of an elector under the constitution, and any statute that adds to the constitutional requirements of an elector or abridges his eligibility is unconstitutional. There is no question but that section 4 does make an additional requirement of the voter otherwise eligible before he can be given a ballot, which requirement is beyond the power of the legislature, especially where constitutional officers are to be elected, as is usual at all general elections in this state.

"It is not within the power of the legislature to abridge the right of suffrage for an officer created by the constitution when that instrument prescribed that such officer shall be chosen by election." (*State, ex rel., v. Doane,* 98 Kan. 435, syl. ¶ 2, 158 Pac. 38.)

"And if said section applies, then this right to vote . . . is a constitutional right, which cannot be abridged by the legislature, or by any other power except the entire people of the state by way of amendment to the constitution." (*Wheeler v. Brady,* 15 Kan. 26, 32.)

"As the people, with respect to certain offices, have seen fit by express constitutional provisions to restrict their freedom of choice, it is a fair inference that, where the constitution is silent, they intended no restriction." (*Wright v. Noell*, 16 Kan. 601, syl. ¶ 2. See, also, *State v. Monahan*, 72 Kan. 492, 84 Pac. 130.)

In Indiana a statute adding a property qualification to the constitutional qualifications of an elector was held invalid. (*Morris et al. v. Powell*, 125 Ind. 281.)

"Where the constitution of the state fixes the qualifications of voters in direct, positive terms, these qualifications cannot be added to or changed by legislative enactment." (20 C. J. 62.)

"They [legislative regulations] must not, directly or indirectly, deny or abridge the constitutional right of the citizen to vote or unnecessarily impede the exercise of that right. If they do they must be declared void." (9 R. C. L. 982.)

Appellant cites numerous cases from other states showing additions to constitutional qualifications are valid as to eligibility of voters at primary elections. The logic and reasoning in them is convincing, but here the additional qualification is imposed on the voter at the general election, and we are decidedly in accord with the trial court in holding section 4 to be in violation of section 1, article 5 of the constitution, and that such ruling does not affect the validity of the other sections of the act.

The judgment is affirmed.

HARVEY and HOPKINS, JJ., concur in the order of affirmance.

DAWSON, J. (concurring in part): I concur in the judgment, but dissent from so much of the opinion as takes it for granted that the constitution requires secrecy of the ballot. For the first thirty-six years of the state's history there was no such thing as a secret ballot. That idea came along with the other formalities of the Australian ballot law first enacted in 1897. I have always understood that the ballot requirement of the constitution was to make it more difficult to "juggle the count"—a function it is well adapted to perform. But the ballot in use prior to 1897 was of whatever form, shape or color it might chance to be, and whatever printing or writing it might contain which the voter might choose to insert therein. The ballots were commonly furnished by the candidates for office or by their party committees, and were neither designed nor adapted to secrecy of voting nor had they any concern therewith.