No. 36,099

THE STATE OF KANSAS, *Appellant*, v. REA MORTON, *Appellee*.

(148 P. 2d 760)

Opinion filed May 6, 1944.

*Braden C. Johnston*, assistant attorney general, and *Horace H. Rich*, county attorney, argued the cause, and *A. B. Mitchell*, attorney general, was on the briefs for the appellant.

*Howard T. Fleeson*, of Wichita, argued the cause, and *C. H. Brooks, Homer V. Gooing, Wayne Coulson, Paul R. Kitch* and *Manford Holly*, all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: Defendant was charged with offenses under G. S. 1941 Supplement, 47-421, reading:

"On and after July 1, 1940, any person who shall willfully and knowingly brand or cause to be branded with his brand, or any brand not the recorded brand of the owner, any livestock being the property of another, or who shall willfully or knowingly efface, deface or obliterate any brand upon any livestock, shall be deemed guilty of felony, and upon conviction thereof shall be punished by confinement in the penitentiary for a period not exceeding five years."

The information contained fifteen counts varying only as to description of the animal branded, each count charging in substance that defendant Morton "did . . . willfully and knowingly and unlawfully and feloniously efface, deface and obliterate a brand, theretofore placed and existing on the left hip of" a described steer,

"the property of the said Rea Morton by then and there placing upon and over the then existing brand, a 7M brand belonging to the said Rea Morton, contrary to the statutes ·. . ." The offense thus charged is commonly known as overbranding.

Defendant filed his motion asking the court to quash the information and each count thereof for the reason the facts stated did not constitute a public offense in that it affirmatively appeared the animals alleged to have been overbranded were at all times the property of the defendant, and for the further reason the statute quoted above and upon which the information was grounded offends against article 2, section 16 of the state constitution in that the title of the act contains more than one subject.

The motion to quash was sustained, and the state appeals. It may be noted the record does not disclose the particular reason relied on by the trial court. Both reasons are discussed in the briefs and will be considered.

In a preliminary way it may be said that the statute on which the action is based, as quoted above, is a part of Laws 1939, chapter 222, now appearing as G. S. 1943 Supp. 47-414 *et seq.*, and containing a total of sixteen sections. The title of the act reads:

"An Act relating to livestock, creating the state brand board and brand commissioner, providing for the recording of livestock brands and prescribing penalties for violations, and repealing sections 47-401 to 47-413, both sections inclusive, of the General Statutes of 1935."

A brief résumé of the act shows that section 1 contains definition of words used in the act and that "(b) The term 'livestock' means cattle, sheep, horses, mules or asses. (c) The term 'brand' means any permanent identifying mark upon the surface of any livestock, except upon horns and hoofs, made by any acid, chemical or a hot iron." Section 2 creates a state brand board, and specifies certain duties. Section 3 makes the state livestock sanitary commissioner the state brand commissioner and prescribes his duties. Section 4 provides for adoption and recording of brands. Section 5 provides that livestock may be branded according to rules and regulations laid down by the board "but livestock shall be so branded that they may be readily distinguished should they become intermixed with other herds." Section 6 provides that where a brand is recorded the owner thereof shall be entitled to one certified copy of the record and also for additional copies upon payment made. Section 7 makes it an offense to use any brand not duly recorded, and provides a

penalty. Section 8 has been quoted above. Section 9 pertains to property rights in brands. Section 10 pertains to brands on cattle brought into the state. Section 11 provides for publication of recorded brands from time to time. Section 12 makes it the duty of the attorney general to enforce the act. Section 13 authorizes the board to make necessary rules and regulations to carry out provisions of the act. Section 14 is a separability clause. Section 15 repeals sections specified in the title and section 16 provides for effect of the act on publication in the statute book.

The primary purpose of branding laws generally and of the above statute particularly is to permit identification of livestock. Perhaps the foremost reasons for identification are to make it possible for an owner to recognize his own animals, to facilitate separation where herds become intermixed, to prevent honest but mistaken claims of ownership and to act as a deterrent to theft. In the act here involved it is expressly provided the branding shall be such that livestock may be readily distinguished should they become intermixed with other herds.

In support of the trial court's ruling appellee does not contend that the legislature may not enact legislation that an owner shall not overbrand his livestock, but does contend that the statute is to be so interpreted that it does not denounce overbranding of one's own animals. He contends first that the statute uses the words "willfully and knowingly" and that such words in a criminal statute such as is under consideration imply a deliberate purpose and intent to deceive, and that such purpose and intent cannot exist with respect to a person's own property.

Although it has been held the use of the word "willfully" in a statute is to be interpreted as implying a wrongful motive (*State, ex rel., v. Wilson,* 108 Kan. 641, syl. ¶ 7, 196 Pac. 758), it does not follow the statute must be so construed as to hold that an owner could overbrand his livestock without regard to his motive in so doing. Conceivably the owner might quite innocently efface, deface or obliterate an existing brand on his own livestock, and conceivably he might do it with the most corrupt and illegal motive. In an effort to have the statute read that one might overbrand his own animal, appellee urges that the word "such" has been inadvertently omitted immediately before the last use of the word "livestock" in the section of the statute, and that under the law, when it appears from the context the word has been inadvertently omitted,

the court should supply the word to complete the sense (59 C. J. 992, § 593). We cannot agree there is any inadvertently omitted word. Taking a narrow view perhaps it might be said that brand marks serve no purpose of identification because a person could not steal his own livestock and therefore he is at liberty to change the brands at will. But as we read the statute, that is not the full purpose to be served, as is disclosed by what has been said heretofore. Identification of livestock is expedited by leaving brand marks undefaced and unobliterated, and not by altering or changing them by over-branding. The sole purpose of the statute is not to identify stolen animals, but to aid in identification in caring for livestock, to permit separation when intermixed, to prevent dispute as to ownership, to aid in recovery when theft occurs, and to assist in proof when a thief is being tried in a criminal action for theft.

In a supplemental brief, appellee contends that the section of the statute under which the prosecution was brought, had its origin in the state of Colorado, and that under the decisions of that state an owner commits no offense in overbranding his own animals, and that under usual canons of statutory construction, when Kansas adopted the section, it did so as it had been interpreted in Colorado. Assuming that the section of our statute now under consideration was suggested by the Colorado statute, the following appears: By Revised Statutes of Colorado of 1868, chapter 58, section 8, it was provided that if any person willfully brand or mark with his own brand *any animal* being *the property of another*, or willfully deface or obliterate any mark or brand upon *any such animal, with intent to convert such animal to his own use* or to prevent the owner thereof from recovering the same, he should be deemed guilty of *larceny*. Although no decision from Colorado interpreting that particular statute is mentioned, it seems clear the statute did not cover the animals of the owner. In 1880 the statute was amended to read quite like our present statute, with these exceptions—the Colorado statute does not contain the words "willfully and knowingly" as does ours, and it uses the word "larceny" where ours uses "felony." In the amended act of Colorado the word "any" was omitted, but there was added a provision that the person offending should be liable to the owner for three times the value of the animal, and that the animal should be surrendered to the owner. Our attention is directed to *Bradley v. People*, 8 Colo. 599, 9 Pac. 783, wherein the last act was interpreted. We shall not review that decision here for it

is quite clear that our act and the Colorado act, although alike in some particulars, are radically different in others. The use of the word "larceny" connotes something entirely different from "felony" as the words are used in the two acts. Further, the provisions of the Colorado act about recovery of damages of necessity refer to property 'other than that of the offender. Our statute varies in material particulars from the Colorado statute and it may not be said we adopted it or any construction placed on it.

The motion to quash should not have been sustained for the asserted reason that the information failed to charge a public offense.

Two constitutional questions are presented, which will be considered in the order presented.

While appellant contends the act is wholly constitutional, appellee contends that the subject matter of section 8 is not expressed in the title of the act, as the same has been heretofore quoted. Appellee directs our attention to decisions from other states, which will not be reviewed and to 59 C. J. 811, § 393, and especially to 59 C. J. 814, § 395, reading as follows:

"Under a constitutional requirement that the subject of an act shall be expressed in its title, a statute may ordinarily include provisions giving a remedy or prescribing a penalty for a violation of or noncompliance with the principal requirements of the act, although such provisions are not expressly indicated in the title, but no penalty can validly be imposed for an act other than those included within or suggested by the title."

The only Kansas case cited by appellee is *State v. Barrett,* 27 Kan. 213. In that case the constitutionality of Laws 1881, chapter 128, section 19, was in question. The title of that act was:

"An Act to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific and mechanical purposes, and to regulate the manufacture and sale thereof for such excepted purposes."

It is to be noted the title made no reference to any penalties. Section 19 in effect made it an offense to get and be found in a state of intoxication and imposed a penalty therefor. Space prevents a full review of that case. The court, after stating ten rules of statutory construction, all of which are included in the syllabus, held that the title of the act did not in the slightest or most remote degree refer to the use of liquor and was wholly silent thereon. The particular section was held to violate article 2,. section 16 of the constitution. Among the rules for statutory construction as against attack for unconstitutionality were the following:

"The action of the lawmaking power must in all cases be upheld, unless its action is manifestly in contravention of the constitution.

"In order to correctly interpret that provision of § 16, article 2 of the constitution, which provides that 'No bill shall contain more than one subject, which shall be clearly expressed in its title,' its object must be taken into consideration; and the provision must not be construed or enforced in any narrow or technical spirit, but must be construed liberally on the one side, so as to guard against the abuse intended to be prevented by it, and liberally on the other side, so as not to embarrass or obstruct needed legislation.

"Under this provision of the constitution, the title of an act may be as broad and comprehensive as the legislature may choose to make it; or it may be as narrow and restricted as the legislature may choose to make it. It may be so broad and comprehensive as to include innumerable minor subjects, provided all these minor subjects are capable of being so combined and united as to form only one grand and comprehensive subject; or it may be so narrow and restricted as to include only the smallest and minutest subject.

"In construing the title to an act as well as the act itself, reference must be had to the object of the act, and to the evil sought to be remedied by it.

"It is not necessary that the title to an act should be a synopsis or abstract of the entire act in all details; it is sufficient if the title indicates clearly, though in general terms, the scope of the act.

"Where a section of an act is assailed as being in contravention of said provision of § 16, article 2 of the constitution, it is sufficient if it is germane to the single subject expressed in the title and included therein, provided the act itself does not contain more than this single subject." (Syl. ¶¶ 1, 3, 4, 6, 7, 8.)

In *State, ex rel., v. Everhardy,* 75 Kan. 851, 90 Pac. 276, it was contended an act entitled "An act relating to intoxicating liquors, and amendatory of and supplemental to" certain specified acts was not broad and comprehensive enough to include a provision for ouster of a mayor of a city for failure to observe the same. In the course of the opinion it was said:

"Under numerous decisions upon the limitation of section 16 of article 2·of the constitution . . . it is clear that the act contains no more than one general subject; that its provisions bear a natural relation to each other; and that the one challenged is fairly included within the title of the act." (Citing cases.) (l. c. 852.)

In *State, ex rel., v. Beggs,* 126 Kan. 811, 271 Pac. 400, the validity of a portion of the election laws was in question. We shall not review the facts but it was there contended that parts of the act were not clearly expressed in the title. It was there held:

"Where the subject of the legislation in question is assimilated to the other provisions of the act and is germane and pertinent thereto it cannot be said to be in violation of section 16 of article 2 of the constitution." (Syl. ¶ 1.)

Without reviewing other decisions to the same effect, we think

that it may be said the legislature gave consideration to the problem confronting owners of livestock, especially those having large numbers in large pastures, to know and identify their own livestock, and if any strayed away, became intermixed with others, or were stolen, to be able to trace and identify them, and passed the act under consideration to give relief in the circumstances; that in forming the act it gave consideration not only to the creation of the state brand board and the recording of brands but to matters assimilated, germane and pertinent thereto and to the full purpose to be attained thereby, and that the provision for overbranding does not appear to be distinct from nor foreign to the matters under consideration as evidenced by the title to the act. Bearing in mind our oft repeated statement that we will not declare a statute violative of the state constitution unless invalidity is manifest, we must hold that section of the act is not unconstitutional for the reason asserted.

The other ground of unconstitutionality asserted by appellee is that section 8 quoted above and hereafter referred to as the brand act, amended G. S. 1935, 21-539, hereafter referred to as the section of the crimes act, but did not repeal the amended section as required by article 2, section 16 of the constitution. It may be noted that the title of the brand act did include repeal of a former statute other than the section of the crimes act, and the act contained a repealing section. Shortly stated, appellee's contention is that the brand act does not expressly repeal the section of the crimes act; that the brand act does not pretend to cover the entire field of operation of the section of the crimes act and therefore there is no repeal by implication; that the brand act does in fact amend the section of the crimes act but does not repeal it and therefore violates the constitutional prohibition. The subject of the section of the crimes act is the branding or altering of brands on any stolen animal and on no other, and one who violates that section shall be deemed guilty of larceny. The subject of the section of the brand act is the willfully and knowingly branding or altering the brand of any livestock, either the property of another or his own, and one who violates this section shall be deemed guilty of felony. Theft may be present in the latter case, but it is not an element necessary to guilt. We think the legislature was at liberty to denounce two distinct offenses and that it did so, and that it may not be said the latter enacted act was in any sense an amendment of the act first enacted.

In view of what has been said we conclude the trial court erred

in quashing the information and the various counts thereof. Its ruling is reversed and the cause remanded with instructions to deny the motion to quash.

SMITH, J. (dissenting): I find myself unable to agree with the second paragraph of the syllabus of this case and the corresponding part of the opinion. Article 2, section 16, of the constitution provides as follows:

"No bill shall contain more than one subject, which shall be clearly expressed in its title, and no law shall be revived or amended, unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed."

The title to this act, being chapter 222 of the Laws of 1939, reads as follows:

"AN ACT relating to livestock, creating the state brand board and brand commissioner, providing for the recording of livestock brands and prescribing penalties for violations, and repealing sections 47-401 to 47-413, both sections inclusive, of the General Statutes of 1935."

This act was a new departure in lawmaking for Kansas in that it gave a newly created state board general jurisdiction over branding; provided for the state-wide registration of brands; for the keeping of records by the state brand commissioner; and for the state branding board making rules and regulations.

Section 7 makes it unlawful to use any brand that had not been duly recorded and provided a punishment therefor.

The first part of section 8 makes it unlawful to brand or cause to be branded with his brand or any brand not the recorded brand of the owner any livestock being the property of another.

So much of section 8 and all of section 7 seem to me to be fairly included within the general title creating a branding board and providing for the recording of brands, that is, these penalties are for violations one might expect to find in the statute after reading the title. However, the last provision of section 8 makes it a felony to efface, deface or obliterate any brands upon any livestock. Under the construction that we have given that proviso, in this opinion dealing with the first paragraph of the syllabus, that section makes it a crime for one to obliterate a brand on his own livestock.

In consideration of such a question we should look to the reason for the constitutional provision. That was undoubtedly to prevent the enactment of statutes which would cover such a wide range of subjects that some members of the legislature would vote for a bill

which contained a provision he did not care about seeing enacted into law, or in which he had no interest, just because he was anxious to see enacted some other provision on an unrelated subject in the same bill. We are all familiar with the bad results had in the enactments of the national congress just because there is no such provision in the federal constitution. The enactment of a statute making it a felony for one to deface the brand on his own cattle is such a new field for legislation and so foreign to the other provisions of this statute that I prefer to hold that reference to such a provision should be included in the title to the act.

I do not think the title of the act, which, as I have pointed out, refers to livestock, creating a branding board, authorizing the recording of brands and fixing penalties is broad enough to cover the provision which creates such a crime. Hence, I think the title does not clearly express that much of this act and so much of it is unconstitutional.

WEDELL and HOCH, JJ., join in the foregoing dissenting opinion.