No. 59,556

MICHAEL TOM SAWYER, *Appellant*, v. MARILYN K. CHAPMAN, Sedgwick County Election Commissioner; BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS, DON GRAGG, TOM SCOTT, and BUD HENTZEN, members; and JACK H. BRIER, Secretary of State, *Appellees*.

(729 P.2d 1220)

Opinion filed December 5, 1986.

*Mark J. Bredemeier*, of Gulf & Great Plains Legal Foundation, of Kansas City, Missouri, argued the cause and *Larry G. Wall*, and *Gregory G. Lower*, of Wichita, were with him on the brief for appellant.

*Royce E. Wallace*, of Wichita, argued the cause and was on the brief for appellees Chapman and Board of Sedgwick County Commissioners.

*Leon J. Patton*, assistant attorney general, argued the cause and *Robert T. Stephan*, attorney general, was with him on the brief for appellee Brier.

The opinion of the court was delivered by

HERD, J.: The appellant, Michael Tom Sawyer, challenges the constitutionality of the Kansas Mail Ballot Election Act, K.S.A. 1985 Supp. 25-431 *et seq.* The district court denied Sawyer's petition for injunctive and declaratory relief and Sawyer appeals. The facts are:

The appellant is a resident of and taxpayer and voter in Sedgwick County. The appellees are the county and state public officials who, in the course of their official duties, order, conduct, and supervise mail ballot elections in Sedgwick County.

In May of 1985, the appellee, Board of County Commissioners of Sedgwick County (Board), authorized a countywide mail ballot election pursuant to the Mail Ballot Election Act. The purpose of the election was to obtain voter approval or disapproval of a 1% countywide retailers' sales tax. The sales tax election was conducted by appellee Marilyn Chapman, Sedgwick County

Election Commissioner, under a plan approved by appellee Jack Brier, Kansas Secretary of State. The election took place from July 9, 1985, through July 30, 1985, and resulted in approval of the sales tax levy by a margin of 61,030 to 50,616. Prior to this July 1985 election, Sedgwick County voters had defeated sales tax proposals in standard booth and polling place elections on four previous occasions.

On January 29 of this year, the Board enacted a second resolution authorizing a countywide mail ballot election to obtain voter approval or disapproval for the issuance of $23,870,000 in bonds for the construction of a new jail. This election took place from March 20, 1986, to April 10, 1986, and resulted in defeat of the bond proposal by a margin of 55,095 to 34,156.

Before the ballots were mailed in the second mail ballot election, the appellant filed a petition for a temporary restraining order, injunctive relief, and declaratory judgment. Under Count I of the petition, appellant sought to enjoin the conducting of the jail construction bond election and the final counting of the ballots. After an evidentiary hearing, the district court denied Sawyer's request for injunctive relief on April 7, 1986. Count I was later rendered moot by the results of the election.

In Count II of his petition, appellant sought a declaratory judgment that the Kansas Mail Ballot Election Act is unconstitutional. Appellant contends the Act, and mail ballot voting thereunder, infringe on his right to vote by secret ballot and increase the potential for fraud, intimidation, manipulation, undue influence, and abuse in the voting process. An evidentiary hearing was conducted upon this claim on May 12, 1986, at the conclusion of which the district court denied Sawyer's petition for declaratory relief and stated its findings of fact and conclusions of law on the record. The appellant timely filed notice of appeal with the Court of Appeals and the case was later transferred to this court pursuant to K.S.A. 20-3016(a)(2),(3), and (4).

Before considering the appellant's constitutional challenges, we are first faced with the preliminary issue of standing. The appellees argue the appellant lacks standing to bring this action because he has not suffered damages different in kind from that of the public generally.

It has long been the rule in Kansas that a private person, merely by virtue of being a citizen and taxpayer, may not main-

tain an action against a public board and its members unless he pleads and proves that he has or will suffer, as a result of the action complained of, damages different in kind from that of the public generally. *Linker v. Unified School District 259, Wichita, Kansas*, 344 F. Supp. 1187, 1195 (D. Kan. 1972).

Appellant argues his personal right to vote cannot be "merged" into the voting rights of the general public simply because others may vote. As support for his contention that he has standing to challenge the Mail Ballot Election Act, appellant cites *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 1003, 667 P.2d 879 (1983). There, we held that standing to sue means that a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.

The general rule with regard to standing applies in the absence of statute. Election contests have been given special consideration by the legislature in K.S.A. 25-1434 *et seq*. K.S.A. 25-1435 provides: "Any registered voter may contest . . . the result of any question submitted election at which such voter had the right to vote" on the grounds set out in K.S.A. 1985 Supp. 25-1436(c) if "illegal votes were received . . . which could change the result of the election."

This presents the question of whether challenging the constitutionality of voting by mail falls within the purview of the foregoing statutes. If appellant's argument is correct that mail voting violates the guarantee of a secret ballot, then the ballots cast in the election are illegal and if voided could change the result of the election. We therefore hold appellant has standing to maintain a constitutional challenge to K.S.A. 1985 Supp. 25-431 *et seq*.

Let us now consider appellant's contention that the Mail Ballot Election Act, K.S.A. 1985 Supp. 25-431 *et seq.*, is unconstitutional.

The Kansas Mail Ballot Election Act authorizes the use of mail ballots in certain specified elections (K.S.A. 1985 Supp. 25-432). The Act, which was first passed by the 1983 legislature, originally provided it would expire on December 31, 1985; however, the 1984 legislature unanimously voted to repeal the Act's sunset provision, thus extending the Act.

Appellant's primary argument is that Article 4, Section 1, of the Kansas Constitution mandates a secret ballot and the Mail Ballot Act violates that mandate. Article 4, Section 1 provides:

"All elections by the people shall be by ballot or voting device, or both, as the legislature shall by law provide."

Prior to considering the constitutionality of the Mail Ballot Election Act, we must first determine whether Article 4, Section 1, of the constitution guarantees the right to a secret ballot. The appellant contends that while our constitution does not specifically state that voting shall be "secret," this court has impliedly so held in numerous cases.

In *State, ex rel., v. Beggs,* 126 Kan. 811, 271 Pac. 400 (1928), this court was faced with the constitutionality of a statute which compelled general election voters to declare their party affiliations before being given ballots. In stating the argument, the court noted that Article 4, Section 1, of the Kansas Constitution "implies secrecy of voting and *secures to the voter absolute secrecy as to how he voted."* (Emphasis added.) 126 Kan. at 814. The court then held:

"*The secrecy required is as to his vote for candidates,* not as to political leaning or party affiliation. *Again, the secrecy is not as to how he intends to vote or is inclined to vote, but how he has in fact voted.* We are not persuaded that the divulgence of party affiliation immediately prior to voting violates the secrecy of the ballot guaranteed by the constitution, and therefore conclude that section 4 is not for this reason unconstitutional." 126 Kan. at 814.

Moreover, in an earlier case, *Taylor v. Bleakley,* 55 Kan. 1, 39 Pac. 1045 (1895), this court upheld the constitutionality of an enactment implementing the "Australian ballot" or "secret ballot." In so holding, we reasoned:

"The legislature, within the terms of the constitution, may adopt such reasonable regulations and restrictions for the exercise of the elective franchise as may be deemed necessary to prevent intimidation, fraud, bribery, or other corrupt practices, *provided* that the voting be by ballot, and *that the person casting the vote may do so in absolute secrecy."* 55 Kan. 1, Syl. ¶ 1 (Emphasis added.)

The appellees disagree with the rationale of *Taylor,* and rely instead on *Lemons v. Noller,* 144 Kan. 813, 63 P.2d 177 (1936). In *Lemons,* this court upheld the constitutionality of the Absentee Voters Act, K.S.A. 25-1101 *et seq.,* (now at K.S.A. 25-1114 *et seq.*) and interpreted Article 4, Section 1, of the Kansas Constitution as follows:

"It is also argued that the statutes under consideration cannot be upheld because they do not preserve the secrecy of the ballot. It should be observed that the requirement of article 4, section 1 of our constitution is that 'all elections by

the people shall be by ballot,' and *not by secret ballot*, and the matter of secrecy is one for legislative determination. The securing of secrecy in voting has been the result of gradual growth in the statutes, *even though it be conceded that an election by ballot means a secret ballot."* (Emphasis added.) 144 Kan. at 828 (citing *State, ex rel., Beggs,* 126 Kan. 811).

The court then concludes that the "constitutional right of a voter to cast his vote in secrecy" is a right which he may waive. 144 Kan. at 832.

When the *Lemons* holding is analyzed with our previous opinions, it is clear *Lemons* does not stand for the proposition that there is no constitutional right to secrecy in voting. In fact, the opposite is true. *Lemons confirms* the right of individuals to a secret ballot, but holds *how* that secrecy is preserved is a matter for legislative determination. We conclude Kansas voters are constitutionally guaranteed the right to a secret ballot.

Let us now determine whether or not the Mail Ballot Election Act violates that right.

Appellant points out numerous ways the mail ballot act violates the right to a secret vote and compromises the integrity of the election process.

He first contends nothing prevents a volunteer canvasser who is tabulating election votes from seeing how a voter's ballot is marked. K.S.A. 1985 Supp. 25-433(b) provides that upon receipt of a ballot, the voter shall mark it, sign the return identification envelope, and return the marked ballot to the county election officer. Appellant argues this procedure enables a canvasser to look at the signature on the envelope and then compare it with the marked ballot upon its removal from the envelope.

Appellee Jack Brier responds by pointing out that county election officers are required to verify the signature on the return envelope with the signature on the elector's registration records. The official must then remove the ballot from the envelope in such a way that the vote is not disclosed or observed. The back side of the ballot contains an irregular pattern and number and if the worker starts to remove the ballot from the envelope and does not see the pattern or number, he or she is to turn the ballot and envelope over so the ballot is removed from the envelope face down.

While Brier concedes it is possible a worker might "peek" at a mailed ballot upon its removal from the envelope, he argues there are safeguards to prevent such abuses from happening. He

points out that workers are told both orally and in writing not to view the ballots when removing them from the envelopes; further, the election workers are under observation to insure they do not do so. Finally, he notes that the numerous punitive provisions in the Kansas election laws are added deterrents to any mishandling of ballots. See, e.g., K.S.A. 25-2419, (misconduct of election officer), K.S.A. 25-2420 (election fraud by an election officer), and K.S.A. 25-2432 (forfeiture of office or employment upon conviction).

Appellant next argues no protections are afforded to assure that during the period of time the voter retains the ballot, he or she will not be subject to intimidation and undue influence through door-to-door solicitation, media pressure, and group electioneering. Appellee Brier responds by showing that if a voter is subjected to undue influence by someone attempting to persuade the voter on how to vote or to reveal his vote, there are several safeguards to protect the voter. For example, the voter can warn the perpetrator of the various punitive provisions applicable to voting. See K.S.A. 25-2412 (election forgery), K.S.A. 25-2416 (voting without being qualified), and K.S.A. 25-2431 (false impersonation of a voter). Moreover, if necessary, the voter can report the incident to authorities.

Finally, Sawyer argues the Act provides no protection to insure voters do not vote more than once or that the ballot inside the envelope is the vote cast by the individual who signed the envelope. Brier does not argue that this could not take place but suggests that if a person's ballot is wrongfully voted by another, the voter can go to the county election officer, report the incident, and obtain a replacement ballot.

It is apparent the Mail Ballot Election Act does not violate the guarantee of a secret ballot by its terms, but it must be conceded that voting by mail increases the potential for compromise of secrecy and opportunity for fraud. The question then is whether the objectives to be attained by the Act when weighed against the potential for voter fraud and loss of secrecy are worth the added risk.

Appellees argue the mail ballot act serves a compelling state interest as a reasonable effort by the legislature to obtain increased participation in the democratic process. Appellant argues the need to protect the sanctity of the ballot outweighs the

state's interest in increasing the number of voters. This is the same argument made and accepted in closing voter registration prior to heightened voter interest in the final weeks before election day.

This is an issue of first impression in Kansas. Let us examine statutory and case law from other jurisdictions. First, it should be noted only four states other than Kansas have adopted mail ballot election acts: California (Cal. Elec. Code §§ 1340-1353, 23511.1 [West 1986 Supp.]); Montana (Mont. Code Ann. § 13-19-301 *et seq.* [1985]); Oregon (1981 Or. Laws, Ch. 805 as amended [temporarily codified as notes preceding Or. Rev. Stat. § 254.005 (1986)]); Washington (Wash. Rev. Code § 29.36.120 *et seq.*) (1985).

Of these four states, only California has construed the constitutionality of its mail ballot election act. In *Peterson v. City of San Diego*, 34 Cal. 3d 225, 193 Cal Rptr. 533, 666 P.2d 975 (1983), the California Supreme Court affirmed a trial court ruling and held that the California constitution does not preclude mail ballot voting. In so holding, the California court reasoned that reducing or eliminating the burdens and inconveniences of voting and thereby increasing voter turnout is not only a proper subject of legislation, but is also fundamental to the maintenance of a representative government. 34 Cal. 3d at 229. Accordingly, the court found a compelling state interest existed to justify mail ballot voting.

The legislature weighed the added potential for fraud and loss of secrecy under mail ballot elections against the compelling state interest in increased participation in the election process and concluded the risk worth taking. Its action was lawful. We hold the Kansas Mail Ballot Election Act, K.S.A. 1985 Supp. 25-431 *et seq.*, is constitutional.

The judgment is affirmed.

SCHROEDER, C.J., dissenting: I cannot agree with the court's construction of K.S.A. 1985 Supp. 25-1436(c) to permit any registered voter to "contest the determination of the result of any question submitted election at which such voter had the right to vote" (K.S.A. 25-1435) by challenging the constitutionality of the statute (K.S.A. 1985 Supp. 25-431 *et seq.*) pursuant to which the election was submitted to the voters.

This was not the legislative intent when it *specified the*

*grounds* upon which a voter could *contest the determination of the result of the election.*

The statutory ground asserted by the plaintiff herein is specified in K.S.A. 1985 Supp. 25-1436(c) which reads:

"[I]llegal votes were received or legal votes were rejected which could *change the result of the election.*" (Emphasis added.)

The construction of the statute as the court has construed it will permit any voter to contest the constitutionality of election statutes and place an intolerable burden on the courts. It will also delay the effective administration of government by the litigation procedures required to resolve the issue.

The rule to be applied in this case is that a private person, merely by being a citizen and taxpayer, has no standing to maintain an action against a public body, unless he alleges and proves that he has or will suffer damages different in kind from that of the public generally. *Linker v. Unified School District # 259, Wichita, Kansas*, 344 F. Supp.. 1187, 1195 (D. Kan. 1972).

It is respectfully submitted the appeal should be dismissed on the ground that the taxpayer has no standing to maintain this action.