Donald W. ZOERB, Jr.,
Appellant/Cross–Appellee,

v.

CHUGACH ELECTRIC ASSOCIATION,
INC., an Alaska Electric Cooperative
Corporation, Appellee/Cross–Appellant.

Nos. S–3282, S–3289.

Supreme Court of Alaska.

Sept. 21, 1990.

Charles W. Coe, Smith, Coe & Patterson, and Douglas R. Smith, Anchorage, for appellant/cross-appellee.

Barry J. Kell and Robert L. Richmond, Richmond & Quinn, Anchorage, for appellee/cross-appellant.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

In this appeal, a fired executive claims that his employer dismissed him in violation of his employment contract. The employee claims, among other things, that the board of directors of an electric cooperative met privately in violation of statutory open meeting requirements, and that the jury was improperly instructed on the meaning of "good cause" for terminating his employment. We conclude that, although the open meeting requirements may have been violated, the terminated employee lacks standing to enforce compliance with the statute, and that there was no error in the court's instructions to the jury.

### I

Chugach Electric Association, Inc. (Chugach) hired Donald Zoerb as its Director of Accounting and Finance in 1983. In early 1987, the International Brotherhood of Electrical Workers went on strike against Chugach. According to Zoerb, the strike led to his wrongful discharge, as Zoerb refused to condone the dismissal of a mid-level manager who was at odds with certain Chugach employees. Zoerb believes he was terminated because he disagreed with the decision to fire this employee in order to placate the union. Zoerb claims that the Chugach Board of Directors (the Board) met in violation of the open meeting requirements of AS 10.25.175 and decided, surreptitiously, to terminate him.

Chugach paints a different picture. Shortly before the strike, Chugach members elected several new directors to the Board. After the strike, the Board hired a special consultant to guide it in conducting a "corporate self-evaluation." The Board met a number of times, informally, in what were called "retreats." Based on the consultant's recommendations, the Board decided to restructure the utility and eliminate certain positions, including Zoerb's. The Board sent Zoerb a letter informing him of its actions, stating that the restructuring of its work force was in response to economic conditions. Zoerb was told that he was terminated because of Chugach's need to restructure and not because of his job performance.

Zoerb filed suit, alleging several theories of recovery.[1] At trial, the superior court granted a directed verdict in favor of Chugach on Zoerb's claims for negligent infliction of emotional distress and breach of the open meeting law; it denied Chugach's motion for directed verdict on Zoerb's claims for wrongful discharge and punitive dam-

---

1. Zoerb sought recovery for (1) breach of contract, (2) "detrimental reliance," (3) wrongful discharge, (4) negligent infliction of emotional distress, (5) breach of covenant of good faith, (6) punitive damages (7) breach of open meeting law and (8) "breach of written agreement." Zoerb also alleged conspiracy to terminate him. Zoerb voluntarily dismissed this claim.

ages. The jury returned a verdict in favor of Chugach on these counts, and the court entered a final judgment. This appeal followed.

## II

### A

The Electric and Telephone Cooperative Act (the ETCA), AS 10.25. supplies the exclusive "controlling" provisions applicable to electric cooperatives. AS 10.25.630. Alaska Statute 10.25.175 provides that meetings of a board of directors of an electric cooperative are open to "members of the cooperative." [2]

The trial court concluded that Zoerb, as a non-member of Chugach, did not have an enforceable remedy under the open meeting requirements of AS 10.25.175.[3] Claiming error, Zoerb argues (1) that he is a member of the Matanuska Electric Association, which is a member of Chugach, and he is, thus, an "indirect" member of Chugach; (2) that he has standing because he has suffered an injury as a result of a violation of a statutory duty; (3) that the statutory exceptions allowing the Board to meet in executive session expressly apply to "persons," not members; (4) that the Board regularly "encouraged" its employees to attend its meetings and, therefore, the Board should be "estopped" from claiming the employees have no right to attend the meetings; and (5) that public policy interests are well-served by allowing an employee, with more at stake than a member's monthly utility bill, to compel compliance with the open meeting law.

The statute plainly provides that only "members" of the cooperative have a right to attend board meetings. Where the meaning of a statute is plain, "it should be enforced as it reads without judicial modification or construction." *Horowitz v. Alaska Bar Ass'n*, 609 P.2d 39, 41 (Alaska 1980). While we do not recognize a plain meaning rule *per se*, where a statute's meaning appears obvious and unambiguous, the party asserting a different meaning bears "a correspondingly heavy burden of demonstrating contrary legislative intent." *University of Alaska v. Geistauts*, 666 P.2d 424, 428 n. 5 (Alaska 1983). Zoerb has failed to show any contrary legislative intent.

Had the legislature intended that employees or non-members have the right to attend board meetings, it could have so provided. *See Wilson v. Municipality of Anchorage*, 669 P.2d 569, 571 (Alaska 1983) (state constitution not meant to allow suits against municipality; framers chose language referring only to the state). The legislature, for example, expressly allowed *incorporators* and *directors* of a cooperative to gain membership through another cooperative.[4] *See* AS 10.25.080(a) and 10.-25.140. The absence of similar language in the open meeting statute suggests that the legislature did not intend indirect membership to be allowed under AS 10.25.175. *See Burrell v. Burrell*, 696 P.2d 157, 165 (Alaska 1984) (noting "accepted rule of statutory construction" that the inclusion of specific terms presumptively excludes terms not enumerated).

---

**2.** The statute enumerates three "excepted subject[ ]" areas that "may be discussed in an executive session." AS 10.25.175(c)(1)–(3). The term "executive session" is not defined by the ETCA but is generally understood to be "a session closed to the public." *Black's Law Dictionary* 511 (5th ed. 1979). In general, discussions (1) adversely impacting a cooperative's finances, (2) tending to prejudice the reputation of a person or (3) adversely impacting a cooperative's legal position may be held outside of public scrutiny. AS 10.25.175(c)(1)–(3).

In order to hold an executive session, AS 10.25.175(b) requires that a regular or special meeting be called wherein the question whether sufficient statutory grounds exist for calling an

executive session must be voted upon. Chugach does not contend that the Board "retreats" were in fact executive sessions authorized by statute.

**3.** Alaska Statute 10.25.175 states that *members of the cooperative* have the right to attend board meetings. (Emphasis added.)

**4.** AS 10.25.080(a) and AS 10.25.140 allow members of one cooperative, which is a member of the cooperative at issue, to become incorporators or directors of the subject cooperative. Zoerb argues that this type of indirect membership is sufficient to confer membership status upon him. We reject this argument.

Accordingly, we hold that Zoerb, who was only an *employee* of Chugach, lacks standing to claim the protection afforded *members* of that organization by AS 10.25.-175. The standing requirements in Alaska are liberal in that the litigant must only demonstrate an interest adversely affected by the conduct complained of. *Trustees for Alaska v. State*, 736 P.2d 324, 327 (Alaska 1987), *cert. denied*, 486 U.S. 1032, 108 S.Ct. 2013, 100 L.Ed.2d 601 (1988). So, too, the degree of injury need not be great, as "an identifiable trifle is enough for standing to fight out a question of principle." *Id.* But standing is not an illusory requirement in Alaska. Where the threatened harm exists "solely by virtue of 'statutes creating legal rights,'" it is the invasion of the statutory right which gives rise to the litigant's standing. *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). The focus "in such cases is whether the ... statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* The statute here applies only to members of the cooperative. It therefore affords Zoerb no legally cognizable interest upon which his claim may rest. Without a protectable interest, there can be no "injury" and no interest-injury standing. *See Trustees*, 736 P.2d at 327; *see also Sawyer v. Chapman*, 240 Kan. 409, 729 P.2d 1220, 1222 (1986) (litigant's standing created by statute); *State v. Mach*, 23 Wash.App. 113, 594 P.2d 1361, 1363 (1979) (appellants found to lack standing to challenge statute to extent statute did not apply to them). Thus, the superior court properly directed a verdict in Chugach's favor on Zoerb's open meetings act claim.

B

■■ The trial court ruled inadmissible testimony from witness Mary Frazier regarding "corruption" at Chugach, finding such testimony to be inflammatory and more prejudicial than probative. The court reasoned:

This may very well have been a corrupt organization ... but we're talking about the firing of one person here, and what you're trying to get in is horrendously prejudicial information regarding a whole different group of employees at a time that was months after Mr. Zoerb was fired, and you haven't made the connection, and therefore that evidence won't be admitted.

Zoerb claims "reversible error," arguing that this testimony was admissible as the admission of a party-opponent under Alaska Evidence Rule 801(d)(2)(D). Zoerb's contention that the testimony is a party admission under Evidence Rule 801(d)(2)(D) is immaterial. The question here is whether the profferred testimony was so prejudicial as to outweigh its probativeness. *See* Alaska R.Evid. 403. Whether the statement is a party admission addresses the admissibility of the evidence as a non-hearsay statement. *See Knight v. American Guard & Alert*, 714 P.2d 788 (Alaska 1986); *P.R. & S., Inc. v. Pellack*, 583 P.2d 195, 196 (Alaska 1978). Even assuming that Frazier's statement constitutes a party admission, it would be inadmissible if its prejudicial impact outweighs its probativeness.

It is well established that "the trial court in civil cases has discretion to determine whether the probative value of evidence may be so outweighed by its prejudicial effect as to render the evidence inadmissible." *Davis v. Chism*, 513 P.2d 475, 479 (Alaska 1973). Indeed, Alaska Evidence Rule 403[5] requires the trial court to balance the probative value of evidence offered by a party against the harm likely to result from its admission. *See* Commentary to the Alaska Rules of Evidence, Rule 403.

An abuse of discretion exists only when we are "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." *Dura Corp. v. Harned*, 703 P.2d 396, 409

---

**5.** Evidence Rule 403 provides in part:
"Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice...."

(Alaska 1985) (quoting *Peter Pan Seafoods, Inc. v. Stepanoff*, 650 P.2d 375, 378–79 (Alaska 1982)).

Here, the trial court weighed the impact Frazier's testimony was likely to have and concluded that the testimony would be "horrendously prejudicial." As the record now stands, we are not left with a definite and firm conviction that the trial court erred in its ruling. Accordingly, we hold that the evidence was properly excluded.[6]

## C

■ Zoerb argues next that the superior court erred in its refusal to give his proposed instruction as to the elements of his wrongful discharge claim. Zoerb contends that the superior court failed to properly define what the jury might consider "good cause" for terminating his employment.[7] The instruction given read, in part, as follows:

> Mr. Zoerb and Chugach agreed to an employment contract consisting of both written and verbal terms. Under that contract, Chugach would employ Mr. Zoerb for an indefinite period of time. Under Alaska law, Mr. Zoerb could be terminated from his employment only for good cause.
>
> Good cause means a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power.
>
> . . . .

Mr. Zoerb claims that Chugach breached its contract with him by terminating his employment without good cause.

> If you find it more likely than not that Chugach did not terminate Mr. Zoerb's employment as a result of a good faith managerial decision to restructure the company, but instead terminated him as a result of some bad faith motive, then you must find for Mr. Zoerb.

■ A reduction in work force compelled by legitimate and sufficient business reasons may constitute "good cause" to terminate an employee. *See Boynton v. TRW, Inc.*, 858 F.2d 1178, 1184 (6th Cir.1988) (Michigan law) ("[w]e find virtually no support for Boynton's claim that a 'just cause employment contract' guarantees permanent employment regardless of changes in economic conditions, absent specific language to that effect"); *Cox v. Resilient Flooring Div. of Congoleum Corp.*, 638 F.Supp. 726, 731 (C.D.Cal.1986) (California law) ("[r]eduction in force has been held to constitute good cause"); *Malmstrom v. Kaiser Aluminum & Chemical Corp.*, 187 Cal.App.3d 299, 231 Cal.Rptr. 820, 832 (1986) ("depressed [economic] conditions of its ... business" justified termination of employee for good cause); *Crosier v. United Parcel Service, Inc.*, 150 Cal.App.3d 1132, 198 Cal.Rptr. 361, 366 (1983); *Bhogaonker v. Metropolitan Hosp.*, 164 Mich. App. 563, 417 N.W.2d 501, 502 (1987); *Friske v. Jasinski Builders, Inc.*, 156 Mich.App. 468, 402 N.W.2d 42, 44 (1986)

---

6. Zoerb also contends that the trial court erroneously limited the testimony of Mr. Hart and Mr. Vecera and erred in improperly rehabilitating a witness by leading questions. Chugach points out that these arguments were not raised in Zoerb's Points on Appeal. In his reply brief Zoerb counters by claiming that "[e]ssentially, these issues were raised in broad terms and the Appellant has combined several issues as to specific evidence. The only thing really changed is the short caption of what is being argued."

We cannot find the "broad terms" which Zoerb alleges would support the briefed arguments. Accordingly, these points will not be considered. Alaska R.App.P. 210(e) ("the appellate court will consider nothing but the points ... stated"). *See Armco Steel Corp. v. Isaacson Structural Steel Co.*, 611 P.2d 507, 519 (Alaska 1980); *Moran v. Holman*, 501 P.2d 769, 770 n. 1 (Alaska 1972).

7. Chugach cross-appeals the trial court's denial of its motion for a directed verdict dismissing the claim for punitive damages as well as its motion for a directed verdict on the wrongful discharge claims. Our discussion in Part C relative to the jury instruction encompasses Chugach's cross-appeal issue pertaining to legitimate economic factors constituting "good cause" for termination.

As to the punitive damages issue, we note that count VII of the complaint alleged that Chugach's conduct was "outrageous, willful and wanton." Chugach moved for a directed verdict on this count. The trial court submitted the issue of punitive damages to the jury. Since the jury found in favor of Chugach, it never reached the punitive damages claims. Any error by the trial court in submitting the issue to the jury was harmless. We therefore need not address this issue.

("Case law indicates that termination of the employment of an otherwise competent employee due to an economically motivated business closing is not grounds for a wrongful discharge claim."); *see also* J. McCarthy, *Recovery of Damages for Wrongful Discharge* § 2.29, at 173–74 (2d ed. 1990); H. Perritt, Jr., *Employee Dismissal Law and Practice* § 7.15, at 404–05 (2d ed. 1987) (legitimate business interests may be a defense even in cases where termination was partly motivated by improper motive).

It is equally apparent that employers cannot use the defense of economic necessity as a pretext "for discharges which would otherwise be subject to a just cause attack by the employee." *Ewers v. Stroh Brewery Co.*, 178 Mich.App. 371, 443 N.W.2d 504, 507 (Mich.App.1989). The legitimacy of the employer's economic necessity defense is reviewable by a jury to determine "whether 'economic necessity' was [the employer's] true reason for discharging [the employee]." *Id.*

We think the trial court's instruction adequately informed the jury that it was to consider the true reasons behind Chugach's decision to terminate Zoerb. The jury concluded that Chugach had "good cause" to terminate Zoerb, as its decision to eliminate his position was undertaken in good faith and motivated by genuine economic concerns. Finding no error, we AFFIRM.