John BINDER, Appellant,

v.

**FAIRBANKS HISTORICAL PRESERVATION FOUNDATION and Alaska National Insurance Company, Appellees.**

No. S–5501.

Supreme Court of Alaska.

Aug. 26, 1994.

Michael A. Stepovich, Fairbanks, for appellant.

Theresa Hennemann and Elizabeth D. Goudreau, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. Pro Tem.*

## OPINION

MOORE, Chief Justice.

This workers' compensation case concerns the extent of an employer's liability for reemployment benefits pursuant to AS 23.30.041. John Binder (Binder) seeks a ruling permitting the Alaska Workers' Compensation Board (Board) to require that his employer pay for a second reemployment plan after Binder's first plan failed to meet the expectations of all involved parties. Binder asserts that, although he completed all of the training contemplated by his first plan, the plan did not adequately prepare him to compete in his chosen field.

The Board awarded Binder a second reemployment plan. Binder's employer, the Fairbanks Historical Preservation Foundation, and its insurance carrier, Alaska National Insurance Company (collectively referenced as FHPF), contend that AS 23.30.041(k) and (*l*) set forth the maximum amount of time and money available for any number of reemployment plans which Binder pursues. Because the aggregate cost of Binder's first and second plans will exceed the $10,000 limitation of AS 23.30.041(*l*), and their total time will exceed the two year time limit of AS 23.30.041(k), FHPF asserts that the Board erred as a matter of law in approving Binder's proposed new plan.

The superior court agreed with FHPF, ruling that the statutory time and cost constraints set forth in AS 23.30.041(k) and (*l*) limit the Board's authority to extend Binder's reemployment benefits. We affirm.

\* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

## I. *Facts and Proceedings*

Most of the operative facts in this case are uncontested. In 1988 Binder worked for the Fairbanks Historical Preservation Foundation on the restoration project of the riverboat "Nenana." In August 1988 Binder lost four fingers on his left hand while performing carpentry work.

FHPF accepted Binder's worker's compensation claim. In the fall of 1988, Binder was determined to be eligible for reemployment benefits pursuant to AS 23.30.041. Binder and the rehabilitation counselor of his choice agreed upon a written reemployment plan that would provide Binder with on-the-job training in the field of videotape editing. FHPF agreed to this plan, which went into effect around January 13, 1989.

The goal of the written plan was to provide sixteen weeks of training between January and May 1989, after which Binder would be able to control video consoles and television monitors and "edit[ ] video tapes, graphics and computerized effects in order to create a variety of productions such as television commercials, special broadcast segments and corporate training films." To acquire these skills, Binder received two weeks of technical training in the area of basic video editing from Alaska Video Productions of Fairbanks. Binder then traveled to California for two weeks of intensive training with CMX Corporation, and he returned to Fairbanks for an additional twelve weeks of on-the-job training with Alaska Video Productions. Binder completed his training around May 5, 1989. FHPF expended $6,058.12 to implement Binder's reemployment plan.

Shortly after his completion of the plan, Alaska Video Productions terminated Binder because he lacked the technical skills necessary for the job. Binder then requested that his training period be extended so that he could obtain the necessary skills for videotape editing. In the alternative, Binder requested a new reemployment plan that would return him to remunerative employability as set forth in AS 23.30.041(i) and (p)(7).

The Rehabilitation Benefits Administrator designee (RBA) determined that Binder's reemployment plan had failed because it had not provided him with the skills necessary to compete in the video editing labor market. The RBA concluded that the plan could not be successfully modified to provide Binder with adequate skills in video editing within the two year time span mandated by AS 23.30.041(k), and that Binder therefore was entitled to a new reemployment plan.

Pursuant to the RBA's decision, Binder and a new rehabilitation specialist developed a second reemployment plan. The proposed second plan was designed to train Binder in the field of nondestructive testing. The plan required eighteen months of out-of-state schooling in nondestructive testing and was projected to cost approximately $9,913.

FHPF appealed the RBA's decision awarding Binder a second plan. FHPF agreed that the first plan had failed to meet the expectations of the parties in that it did not provide Binder with all of the skills he had hoped to acquire. However, FHPF claimed that it should not be held responsible for Binder's disappointment in the outcome of his plan, particularly when Binder had developed and pursued the plan with knowledge of the limited broadcasting market in Fairbanks. More significantly, Binder had not expressed dissatisfaction with his plan until its completion. Accordingly, FHPF argued to the Board that (1) AS 23.30.041 provides for only one reemployment plan; (2) even if additional plans are authorized, FHPF could only be liable for a maximum of two years of reemployment benefits and a total $10,000 in cost for any number of plans; and (3) Binder was already "remuneratively employable" as defined in AS 23.30.041(p)(7) because he had returned to work for greater than 60% of his gross wages at the time of injury.[1]

The Board reviewed the RBA's decision for an abuse of discretion. It found that "[i]f the video plan was fatally flawed from its inception, it was not a valid 'plan' under the statute and the employee is still entitled to one (and only one) valid plan." The Board

1. Following his termination from Alaska Video Productions, Binder was employed for various intervals by FHPF as a painter and sander, by the Fairbanks North Star Borough as a parks laborer, and by a car wash as an attendant.

concluded that the RBA had not abused her discretion in finding the first plan invalid because it could not provide Binder with adequate skills within the time constraints provided by AS 23.30.041(k). The Board therefore upheld the RBA's order requiring FHPF to pay for a second reemployment plan which could cost up to $10,000 and could take up to two years.

The superior court reversed the Board's decision. The court determined that the issue to be resolved was one of statutory interpretation, which is not entitled to deferential review. It then found that Binder's first reemployment plan was valid at the time it was prepared; there was no evidence to suggest that the procedures set forth in AS 23.30.041(h) were not followed in developing the plan, or that the plan was premised on an unreasonable expectation that Binder would acquire sufficient skills to be remuneratively employable in the video editing field after a sixteen week training period. Upon concluding that the plan comported with the procedural aspects of the statute, the court determined that the Board's award of a second rehabilitation plan violated the express terms of AS 23.30.041(k) and (l) because it exposed FHPF to aggregate reemployment training costs greater than $10,000 and extended benefits past the statutory two year time limit. Binder appeals.

## II. Standard of Review

■■■■ The issue in this appeal is one of statutory interpretation: whether the Board violated mandatory statutory limitations on available reemployment benefits by ordering FHPF to finance a second reemployment plan that, in conjunction with Binder's first plan, will exceed the $10,000 cost limitation and the two year time limit set forth in AS 23.30.041(l) and (k). This question is a legal one which does not involve any administrative expertise or the formulation of fundamental policy. We therefore apply the independent judgment standard of review. *Flisock v. State, Div. of Retirement & Benefits*, 818 P.2d 640, 642 (Alaska 1991). Exercising our independent judgment, we will adopt the

statutory interpretation that is "most persuasive in light of precedent, reason and policy." *Langdon v. Champion*, 745 P.2d 1371, 1372 n. 2 (Alaska 1987).[2]

■■ Binder argues that application of the reasonable basis standard of review is appropriate. He asserts that "how a particular injured worker is evaluated, how a reemployment plan is devised, and put into effect, and whether or not it ultimately succeeds or fails" are vocational rehabilitation issues best determined by experts in the field. Moreover, since the statute does not address "failed" reemployment plans, Binder argues that AS 23.30.041 is ambiguous, and that the Board made a policy determination placing the financial risk of failed plans on employers. According to Binder, this policy determination should be accorded deferential review.

We disagree. The question in this case is not whether the Board reasonably determined that Binder could not successfully perform in the video editing field within the statute's two year time limit. Nor is there any question about the particular reemployment training that would be most appropriate for Binder. Accordingly, the Board's expertise in vocational rehabilitation is not implicated in this case. The fundamental question is one of statutory interpretation to which we apply our independent judgment.

## III. Discussion

*The Board's order for a second reemployment plan violated AS 23.30.041(l).*

Alaska Statute 23.30.041 provides for workers' compensation reemployment benefits. Pursuant to subsection (h) of the statute, an eligible injured worker must cooperate with a rehabilitation specialist to formulate a reemployment plan which contains a variety of information, including the occupational goal of the plan, a detailed schedule for achieving the goal, an estimation of time and cost, and an assessment of the worker's skills and capabilities. *See* AS 23.30.041(h). As part of the plan, the rehabilitation counselor must determine that, in light of the worker's

---

2. When the superior court acts as an intermediate court of appeal, we will directly and indepen-dently review the merits of the administrative determination. *Flisock*, 818 P.2d at 642.

skills and capabilities, the worker "can be reasonably expected to satisfactorily complete the plan and perform in a new occupation within the time and cost limitations of the plan." AS 23.30.041(h)(9).

The statutory time and cost limitations for the reemployment plan are set forth in AS 23.30.041(k) and (l), which provide:

(k) Benefits related to the reemployment plan may not extend past two years from the date of plan approval or acceptance, whichever date occurs first, at which time the benefits expire....

(l) The cost of the reemployment plan incurred under this section shall be the responsibility of the employer, shall be paid on an expense incurred basis, and may not exceed $10,000.

■ Binder argues that the time and cost ceilings of subsections (k) and (l) only begin to accrue when a reemployment plan is in fact successful, i.e., when the injured worker is successfully restored to remunerative employability as envisioned by the plan. Binder asserts that, when a plan is not in fact successful, the time and cost limitations of AS 23.30.041(k) and (l) are not set in motion, and the employee still has the full two years and $10,000 to use as part of a new, valid plan. Thus, Binder argues, the term "reemployment plan" includes only valid or successful plans, and employers must bear the financial risks associated with failed plans. As a result, Binder claims that FHPF may be lawfully required to bear the cost of his second plan.

The definition of a "reemployment plan" urged by Binder is inconsistent with a reasonable reading of the statute's language. Binder proposes a very technical definition which is not only unsupported by the language of the statute or its legislative history, but would create unsound policy. Binder's argument to recognize only "successful" plans would encourage employees to bring hindsight challenges to their plans, thereby undermining efficiency and finality in the implementation of AS 23.30.041. This construction would also transform employers into insurers of every rehabilitation effort, a result the Legislature surely did not intend. We therefore reject Binder's argument and

conclude that any time and money spent on Binder's first reemployment plan must be counted toward the statutory maximums for which FHPF may be liable.

■ A number of circumstances support this conclusion. First, there is nothing to suggest that Binder's first reemployment plan was not valid. From the record, it appears that all of the procedural requirements of AS 23.30.041(h) were satisfied in developing the plan. Further, all the parties agreed to the plan, thereby satisfying the acceptance or approval provision of AS 23.-30.041(j). Significantly, had there been any disagreement about the terms of the plan, any party could have submitted the plan to the RBA for approval. AS 23.30.041(j). The RBA's decision could be reviewed in a hearing before the Board. *Id.* The Board's resulting order would operate as a final adjudication of the issue. We view the parties' agreement on a plan in a similar perspective. That is, once the plan has been formulated and approved by the parties and the rehabilitation specialist, *see* AS 23.30.041(h), (j), their agreement acts as an adjudication which may be altered only for limited reasons, such as a showing of fraud, misrepresentation, or a failure to meaningfully or substantially comply with the statutory requirements.

■ There is no evidence of such circumstances in this case. Prior to signing the plan, FHPF's obligation was to review it for compliance with the statute and, if reasonable, to agree to the employee's desired reemployment training. FHPF met this obligation here. It had no obligation to insure the ultimate success of every aspect of or expectation associated with the plan. Similarly, no evidence in the record suggests that Binder's chosen rehabilitation counselor failed to comply with AS 23.30.041(h) in designing and approving the video editing plan. One aspect of the counselor's approval was his finding that Binder could "be reasonably expected to satisfactorily complete the plan and perform in a new occupation within the time and cost limitations of the plan." AS 23.30.041(h)(9). There has been no determination that this finding was unreasonable at the time it was made. Standing alone, Bind-

er's apparent misperception either of his own skills and interests, or of the nature of the video editing market in Fairbanks is insufficient to invalidate his plan.

Given that Binder's first plan was valid, we next review the language of AS 23.30.041(k) and (l). In doing so, we find that the unambiguous language of these subsections states that an employer's total exposure for any number of reemployment plans an employee pursues must be capped at $10,000 and two years in time.[3] We therefore reject Binder's arguments in favor of a contrary ruling. *See Yahara v. Construction & Rigging, Inc.*, 851 P.2d 69, 72 (Alaska 1993) (this court "will neither modify nor extend a statute if its language is unambiguous and expresses the legislature's intent, and if its legislative history reveals no ambiguity"); *Zoerb v. Chugach Elec. Ass'n,* 798 P.2d 1258, 1260 (Alaska 1990) (where a statute's meaning appears clear and unambiguous, the party asserting a different meaning bears a heavy burden of demonstrating contrary legislative intent).

In addition to the express language of the statute, our conclusion is compelled by the legislative history of the 1988 amendments to the act. Numerous committee hearing records reflect that one of the primary goals in revising the vocational rehabilitation system was to control the costs of rehabilitation. This was accomplished by a number of measures, including making reemployment training voluntary and limiting the time and money available for that training. *See, e.g., An Act Relating to Workers' Compensation, and Providing for an Effective Date: Hearings on SB 322 before the House Judiciary Comm.*, 15th State Leg. (April 16, 1988) (statement of Committee Chairperson John Sund that the revisions to the vocational rehabilitation system attempted to remedy the problems of the act by making the sys-

tem voluntary, and by limiting rehabilitation to two years and a maximum $10,000); *id.* (statement of Dick Cattanach, member of the task force recommending changes to AS 23.30.041, that the intent of the task force was to cut the cost of reemployment benefits); *id.* (April 15, 1988) (statement of Committee Chairperson John Sund that the bill attempted to control costs by measures including the $10,000 cap on vocational rehabilitation); *see also* House Judiciary Comm., 15th State Leg., Sectional Analysis of House Judiciary Comm. Substitute for Senate Bill 322, at 5 (April 6, 1988) [hereafter *House Analysis* ] (indicating that the purpose of the two year and $10,000 limitations was "to encourage efficient and realistic use of rehabilitation monies by placing a reasonable limit on them," and noting that the overall goal of the revisions to the vocational rehabilitation system was to promote a system that is more prompt, more efficient, more cost-effective and less-litigated).

The legislative history also indicates that the two year time limitation was intended to return injured workers to the work force as expeditiously as possible. This goal was premised on studies showing that the longer an employee is out of the work force, the less likely it becomes that the worker will successfully return to it. *See House Analysis* at 4–5 (noting that all known rehabilitation studies conclude that early rehabilitation is much more likely than later efforts to result in a return to work).

Allowing a new or substantially revised reemployment plan to restart the two year clock would impede this objective. Similarly, interpreting the $10,000 limitation to apply independently to every new reemployment plan would undermine the goal of cost control. It would also adversely affect the efficiency and certainty of the reemployment training program, since there would always be a possibility that an employee could have

---

**3.** We reject FHPF's claim that AS 23.30.041 rigidly authorizes only one reemployment plan which, once accepted or approved, cannot for any reason be modified in favor of a different plan. We see very little in the statutory language or in its legislative history to suggest that a plan may not be modified or terminated in favor of a more suitable plan if circumstances arising during reemployment training so warrant and if

approval is obtained pursuant to AS 23.30.041(j). To find otherwise would remove all flexibility from the statute and could hinder the goal of providing effective reemployment training. We find only that any time or money expended toward prior reemployment efforts must be counted toward the employer's total liability under subsections (k) and (l).

his or her first plan declared unsuccessful, and obtain a new plan for which the employer would have entirely new responsibility.[4]

For these reasons, we conclude that any time or money spent on the implementation of a reemployment plan agreed upon or approved pursuant to AS 23.30.041(j) must be counted toward the statutory maximums set forth in AS 23.30.041(k) and (*l*). In this case, the Board clearly violated AS 23.30.041(*l*) by ordering that FHPF must pay for a second reemployment plan that, in conjunction with the cost of Binder's video editing plan, certainly will exceed the $10,000 limitation.[5]

### IV. *Conclusion*

In sum, based on the express language of the statute as well as all indications gleaned from its legislative history, we conclude that subsections (k) and (*l*) set forth an employer's total liability for any number of reemployment plans that an employee pursues. As FHPF notes, the Board's holding to the contrary could subject an employer to unlimited exposure for multiple reemployment plans, in violation of the statute's language as well as the Legislature's intention. Because the Board's order clearly exposes FHPF to reemployment training costs in excess of $10,000, we AFFIRM the ruling of the superior court which reversed the Board's decision.[6]

---

4. Moreover, the revisions making reemployment training voluntary were designed to promote an employee's active participation in selecting his or her rehabilitation specialist and in designing the reemployment plan. AS 23.30.041(g), (h). Given this, there is little justification for allowing the employee to later challenge the plan as unsuccessful and obtain a new plan with no offset for the time and money expended toward the earlier plan.

5. In conjunction with Binder's first plan, the actual training time taken by his proposed second plan would total 22 months. The parties do

not specifically address whether this time period violates AS 23.30.041(k), since they do not discuss whether the two year time limitation may be tolled by interruptions in an employee's actual training. Because the parties focus primarily on the Board's violation of the cost limitation of AS 23.30.041(*l*), and because this violation is clear, we do not address whether subsection (k) was violated in this case.

6. In light of our decision, we need not address FHPF's argument that the Board failed to select reemployment benefits consistent with AS 23.30.-041(i).