Peter E. **FLISOCK**, Appellant,

v.

The **STATE of Alaska, DIVISION OF RETIREMENT AND BENEFITS,** Appellee.

No. S–3725.

Supreme Court of Alaska.

Oct. 4, 1991.

Susan R. Sharrock and Richard W. Maki, Hellén, Partnow & Condon, Anchorage, for appellant.

Virginia B. Ragle, Asst. Atty. Gen., Juneau and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Peter E. Flisock seeks a higher monthly retirement benefit under the Teachers' Retirement System (TRS) than he is now receiving. Flisock argues that the average base salary used in calculating his retirement benefits should include the lump-sum payment he received for unused leave he accrued over six years. The Division of Retirement Benefits (division) did not include the unused leave payment. The Teachers' Retirement Board (board) and the superior court both affirmed the division's decision. We conclude that the division should have included the lump-sum Flisock received for unused leave accrued during three of the six years in calculating his average base salary. Therefore we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

From 1969 through 1988, Peter E. Flisock was employed as a teacher, principal, or superintendent in four rural Alaska communities. Flisock first became enrolled in TRS[1] in August 1969 when he was employed as a teacher in Nulato. He served in that position for three years, until assuming a position as principal in Galena for the 1972–73 school year. From September 1973 to June 1980, he was superintendent of schools for the Galena City School District. From July 1980 through June 1986, Flisock served as superintendent of the Southwest Region School District (Southwest Region) in Dillingham. From August 1986 to June 1988, he was principal of the Napaaqtugmiut School for the Northwest Arctic School District in Noatak.

Flisock retired on July 1, 1988, after nineteen years of employment in these

---

1. AS 14.25.010–.220 provides for teachers' retirement. Both the board and the superior court inadvertently referred to the Public Employees' Retirement System (PERS) as provided for in AS 39.35.010–.690. Although the two systems are similar, they are provided for in two separate sections of the statutes.

Alaska school districts. He was allowed to claim credit for six years of "outside" teaching service, and thus was entitled to full retirement under AS 14.25.110(a)(4).[2]

At the time of Flisock's retirement, AS 14.25.110(d) entitled a retired member of TRS to a monthly benefit equal to "two percent of the member's average base salary during any three school years of membership service times the years of credited service, including credited fractional years, divided by 12." A member's average base salary is calculated by adding the member's three highest years' base salary and dividing by three. AS 14.25.220(5). Flisock earned his highest salary, $98,700 annually, during the last three years he was employed by the Southwest Region as superintendent. This was the amount that the division used to calculate Flisock's monthly retirement benefit.

According to Flisock, his base salary for 1985–86 should include an additional $35,-304.66 he received that year for ninety-three days of unused leave he had accumulated over the six years he served as superintendent of the Southwest Region. While employed by the Southwest Region, Flisock had three separate employment contracts. The first contract was a one-year contract covering the 1980–81 school year; the second was a two-year contract covering the 1981–83 school years; the third was a three-year contract covering the 1983–86 school years. All three contracts provided that Flisock could take thirty work days (six work weeks) of leave per year. If he worked instead of taking leave on some of these days, Flisock would be paid his per diem rate for each day of additional service up to fifteen days per year. Payment for

these additional days of service would be made at the end of the contract period or any successive contract period.[3]

The division administrator denied Flisock's request to have the amount paid to him for six years of unused leave included in the determination of his TRS benefits. Flisock appealed the decision to the board pursuant to AS 14.25.035(e). The board affirmed the decision of the administrator. Flisock then appealed to the superior court, AS 22.10.020 and Alaska Appellate Rule 602, which affirmed the board's decision. Arguing that he should be allowed to include at least the lump-sum he received for accrual of unused leave during the three years used to calculate his average base salary, Flisock petitioned for rehearing. The superior court denied rehearing. Flisock appeals.

## II. STANDARD OF REVIEW

■ Since the superior court acted as an intermediate court of appeal, we scrutinize directly and independently the merits of the board's decision. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987). The fundamental issues in this case are questions of law. We must interpret the definitions of "base salary" and "compensation" used in AS 14.25.220. Generally, we exercise our independent judgment when reviewing issues of statutory interpretation. *Id.* at 903–04. "[W]here ... the issues to be resolved turn on statutory interpretation, the knowledge and expertise of the agency is not conclusive of the intent of the legislature in passing a statute." *Union Oil Co. v. State, Dep't of Revenue,* 560 P.2d 21, 23

---

**2.** AS 14.25.110(a)(4) provides:
   Subject to AS 14.25.167, a member is eligible for a normal retirement benefit if the member ... has at least 25 years of credited service, the last five of which have been membership service.

**3.** Paragraph 9 of the 1983–86 contract provided:
   In addition to annual salary the SUPERINTENDENT shall receive the following forms of compensation in consideration of the faithful performance of the duties of the SUPERINTENDENT of the SOUTHWEST REGION SCHOOL DISTRICT: ...

   (e) The SUPERINTENDENT shall accrue annual leave at the rate of two and one-half (2½) days per month, with the provision that at least fifteen (15) days of said leave must be used during the annual period of this contract. Unused leave shall be paid at the daily per diem rate at the termination of this contract or, in the event that a new contract is entered into, may be carried forward as accrued leave.
   Virtually identical provisions were included in each of Flisock's first two contracts with the Southwest Region.

(Alaska 1977) (footnote omitted); *see also Wien Air Alaska, Inc. v. State, Dep't of Revenue*, 647 P.2d 1087, 1090 (Alaska 1982) ("As repeatedly noted by our court, it is within the court's special competency to independently interpret a statute."). Accordingly, we need not defer to the board's interpretation of the relevant definitions in AS 14.25.220.[4]

## III. DISCUSSION

A. Does the Alaska Constitution require that Flisock's retirement benefits be calculated in accordance with the law and practice in 1969, the year in which he first entered the Teachers' Retirement System?

■ Article XII, section 7 of the Alaska Constitution provides:

Membership in employee retirement systems of the State or its political subdivisions shall constitute a contractual relationship. Accrued benefits of these systems shall not be diminished or impaired.

Flisock argues that this constitutional provision requires that his retirement benefits be calculated according to the law and practice in 1969. Instead, the board applied the law as it existed in 1980, the first year the Southwest Region employed Flisock as superintendent. Apparently the board reasoned that the unused leave at issue did not accrue until Flisock began employment with the Southwest Region. Therefore, the board concluded that Flisock's expectations concerning the inclusion in calculating his retirement benefits of compensation for unused leave could not have arisen until he entered an employment contract with the Southwest Region.

We agree with the superior court that the board's interpretation is erroneous. We have clearly stated that an employee's rights to retirement benefits vest on employment and enrollment in a retirement system like TRS. *Sheffield v. Alaska Pub. Employees' Ass'n*, 732 P.2d 1083, 1085 (Alaska 1987); *Hammond v. Hoffbeck*, 627 P.2d 1052, 1057 (Alaska 1981). We have also said that the vested rights protected by article XII, section 7 of the Alaska Constitution "necessarily include ... the dollar amount of the benefits payable." *Hoffbeck*, 627 P.2d at 1058. It is undisputed that Flisock first enrolled in TRS in 1969. Therefore, Flisock is entitled to have his benefits calculated according to 1969 law.

B. Is Flisock entitled to have the payments he received for the days he worked in lieu of taking annual leave included in calculating "base salary" for purposes of determining his retirement benefits?

As it read at the time of Flisock's TRS enrollment in August 1969, AS 14.25.220(2) provided:

"base salary" or "basic salary" means any remuneration accrued under a contract to a teacher for professional services rendered during any school year; for purposes of sec. 50 of this chapter, base salary accrued includes any payments made after June 30 of a school year for services rendered before the end of the school year.

Ch. 84, § 15, SLA 1969. In interpreting this statute we first look to the plain meaning of its language. *See North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534, 540 (Alaska 1978) ("a fundamental principle of statutory interpretation is that a statute means what its language reasonably conveys to others").

■ Former AS 14.25.220(2) limits "base salary" to remuneration for services

---

4. This court has occasionally deferred to an agency's interpretation of a statute where it is clear that the legislature intended to leave the agency with discretion to interpret that statute, or where undefined or ambiguous terms appear in the statutory language. *See, e.g., Absher v. State, Dep't of Highways*, 500 P.2d 1004, 1005 (Alaska 1972); *London v. Fairbanks Mun. Utils. Employers Group*, 473 P.2d 639, 642 n. 2 (Alaska 1970). However, there is no indication of any such legislative intent in this case, nor any undefined terms left to agency discretion. Thus, the superior court's reliance on *Absher* and *London* in deciding to apply a rational basis standard of review was misplaced. Reliance on *Absher* is particularly inappropriate since we later rejected the agency interpretation at issue in that case. *See Bailey v. Litwin Corp.*, 713 P.2d 249, 256–58 (Alaska 1986) (overruled *Absher* method of calculating lump-sum permanent disability benefits under Workers' Compensation Act by multiplying maximum amount recoverable to percentage impairment).

rendered during the school year. Clearly, the lump-sum payment of $35,304.66 Flisock received for unused leave accrued during the *six* years he worked for the Southwest Region is not part of his base salary for the sixth year. Most of the $35,304.66 Flisock received in 1986 was not paid as remuneration for professional services rendered during the preceding school year.[5]

We conclude, however, that former AS 14.25.220(2) entitles Flisock to include that portion of the $35,304.66 which represents compensation for the unused leave accrued during each of the three years used in calculating his average base salary. Under a literal interpretation of the words "any remuneration," payment for the days Flisock worked instead of taking leave in a given year should be included in his base salary for that year.[6] Language excluding payments for unused leave from base salary is absent from the 1969 definition of base salary.

In support of a literal interpretation of former AS 14.25.220(2), Flisock offers evidence of procedures under TRS followed by the Anchorage School District, the state's largest school district. In an affidavit, L. Thomas Freeman, a former administrator with the Anchorage School District, stated that in the early 1970's:

> *[A]ll* monetary compensation received by a member of the TRS during any given school year, for whatever purpose, was

included as that member's base salary for purposes of determining the amount of money that was required to be contributed to the TRS. Further, if that year was one of the member's three highest years of earnings, *all* that monetary compensation was used for purposes of determining the amount of the member's monthly retirement benefits.

(Emphasis in original). Freeman stated that he was responsible for administering the district's compliance with TRS rules and regulations. Therefore, his affidavit provides some evidence of the division's practices at the time.[7] We believe that a literal interpretation is appropriate, especially in light of the fact that the state offered no evidence that the division's practice in 1969 was to exclude payments for unused leave.

The legislature did not explicitly exclude payment for unused leave days from the calculation of retirement benefits under TRS until 1982. The definition of "compensation" in AS 14.25.220(10) was then amended to read as follows:

> "compensation" means the total remuneration paid under contract to a member for services rendered during a school year, including cost-of-living differentials, payments for leave that is actually used by the member, the amount by which the member's wages are reduced under AS 39.30.150(c), and the amount

---

5. Even assuming that the Division's practice in 1969 was to include in an employee's base salary for one year payment for unused leave accrued over several years, this fact would not entitle Flisock to include the entire $35,304.66 in his base salary for 1985–86. Such practice by the Division was a misinterpretation of unambiguous language in former AS 14.25.220(2). Flisock does not have a vested right in a mistaken application of the retirement system. *See Whaley v. State*, 438 P.2d 718, 720 (Alaska 1968); *Crumpler v. Board of Administration Employees' Retirement System*, 32 Cal.App.3d 567, 108 Cal. Rptr. 293, 307 (1973); *see also Nevitt v. United States*, 828 F.2d 1405, 1407 (9th Cir.1987) (court need not accept agency interpretation of statute that is "clearly contrary to the [statute's] plain meaning").

6. When evaluating a definition of base salary similar to the broad definition in this case, the New York Court of Appeals held that payments for accumulated vacation credits "represent compensation for services actually rendered."

*Kranker v. Levitt*, 30 N.Y.2d 574, 330 N.Y.S.2d 791, 792, 281 N.E.2d 840, 841 (1972); *see also Washington Fed'n of State Employees v. State*, 98 Wash.2d 677, 658 P.2d 634, 635 (1983) (lump-sum payments for accrued vacation time included under former statute in "greatest compensation earnable" for the purpose of determining pension benefits). These two cases are easier to resolve than the one now before us because a former administrative practice of including leave cash-ins was undisputed.

7. In addition to Freeman's affidavit, Flisock offered his own affidavit in which he testified that he "always understood" that all monetary compensation he received during a given year would be included in his base salary for purposes of calculating his monthly retirement benefit. Apparently, this was also the understanding of the Southwest Region which included the payment to Flisock for his unused leave when determining the employee and employer contributions to TRS for the 1985–86 school year.

deferred under an employer-sponsored deferred compensation plan or the tax shelter annuity plan approved by the Department of Education, *but does not include* retirement benefits, welfare benefits, per diem, expense allowances, workers' compensation payments, or *payments for leave not used by the member*, whether those leave payments are scheduled payments, lump-sum payments, donations, or cash-ins; for purposes of AS 14.25.050, compensation paid includes any payment made after June 30 of a school year for services rendered before the end of the school year.

Ch. 137, § 25, SLA 1982 (emphasis added). In the same act, the legislature made similar changes to the definition of compensation under PERS. Ch. 137, § 68, SLA 1982.

The state argues that the 1982 amendments were simply meant to clarify the system rather than to change it. Legislative history supports the state's interpretation. The governor's transmittal letter accompanying the bill described the amendments as codifying "the division's continuing practice with respect to the definition of 'compensation' by listing some of the items that are typically included or excluded from 'compensation' for retirement purposes." 1982 Senate Journal 428. The division's bill analysis also indicated that amended language "is consistent with longstanding practice and does not constitute a change." The interpretation of legislation by the governor and the agency that sponsored the bill is entitled to be given weight by the court in construing the intent of the statute. 2A C. Sands, *Sutherland Statutory Construction* § 48.05, at 305–06 (4th ed., rev.1984); *State, Div. of Agriculture v. Fowler*, 611 P.2d 58, 60 (Alaska 1980).

Our holding, however, is not inconsistent with the state's interpretation of the 1982 amendments as a codification of existing practice, as distinct from what may have been legally required. First, legislative history of the 1982 amendments is of little help in determining the law in *1969*. As we stated in *Hillman v. Nationwide Mutual Fire Ins. Co.*, 758 P.2d 1248, 1252 (Alaska 1988):

> While the legislature is fully empowered to declare present law by legislation, it is not institutionally competent to issue opinions as to what a statute passed by an earlier legislature meant. If the legislature were in some form to declare its opinion as to the meaning of prior law, that declaration would be entitled to the same respect that a court would afford to, for example, an opinion of a learned commentator; that is, the court would examine the reasoning offered in support of the opinion and either reject or accept it based on the merit of the reasons given. However, instances where the legislature offers reasons in support of an opinion as to the meaning of prior law are very rare.

Second, in his affidavit, Freeman states that in the mid–1970's the division changed its practice from including payments for unused leave to excluding such payments from an employee's base salary for purposes of calculating retirement benefits. We need not determine the legal effect of this practice change in this case since Flisock entered the system in 1969, before the change.

REVERSED and REMANDED for further proceedings consistent with this opinion.