NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JEFF GRAHAM, | ) |
| | ) Supreme Court No. S-17708 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-18-09475 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DIVISION OF | ) AND JUDGMENT* |
| RETIREMENT & BENEFITS, | ) |
| | ) No. 1855 – November 3, 2021 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Jeffrey J. Jarvi, Bozeman, Montana, for Appellant. Laura Wolff, Assistant Attorney General, Anchorage, and Clyde "Ed" Sniffen, Jr., Acting Attorney General, Juneau, for Appellee.

Before: Winfree, Maassen, and Carney, Justices. [Bolger, Chief Justice, and Borghesan, Justice, not participating.]

Jeff Graham successfully sued the Municipality of Anchorage for failing to promote him, with a jury awarding him $100,000 for past lost wages and benefits and $450,000 for future lost wages and benefits. Graham later initiated administrative proceedings against the Alaska Division of Retirement and Benefits, seeking to have the

---

\* Entered under Alaska Appellate Rule 214.

$550,000 credited as compensation for purposes of his Public Employees' Retirement System (PERS) account. An Administrative Law Judge (ALJ) determined that the $100,000 in past wage loss should be credited as PERS compensation and allocated to specific past years of lost wages and benefits. The ALJ rejected Graham's position that the $450,000 award for future lost wages and benefits should be similarly credited. This was the final agency decision.

Graham appealed to the superior court, but the court affirmed the ALJ's decision. The court then awarded the Division attorney's fees for successfully defending Graham's appeal. Graham appeals the superior court's decision and attorney's fees award.

We independently review an administrative decision,[1] and the merits of Graham's claim rest on statutory interpretation questions decided as a matter of law.[2] Like the superior court, we consider and agree with the ALJ's statutory interpretations and adopt the superior court's decision on the merits of Graham's claim against the Division. The superior court's decision is attached as an appendix.[3]

We also affirm the superior court's attorney's fees award. Graham is

---

[1]     *Fantasies on 5th Ave., LLC v. Alcoholic Beverage Control Bd.*, 446 P.3d 360, 366 (Alaska 2019) ("When the superior court acts as an intermediate appellate court, we independently review the merits of the underlying administrative decision." (quoting *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 72 (Alaska 2013))).

[2]     *Alaska Pub. Offs. Comm'n v. Not Tammie*, 482 P.3d 386, 388 (Alaska 2021) ("Statutory interpretation is a question of law, which we review de novo." (alteration omitted) (quoting *Madonna v. Tamarack Air, Ltd.*, 298 P.3d 875, 878 (Alaska 2013))).

[3]     The superior court's decision has been edited to include minor clarifications and to conform to supreme court style and technical requirements.

incorrect as a matter of law in arguing that he is entitled to an award of attorney's fees for prevailing, in part, before the ALJ. The attorney's fees award to the Division was for work performed in the superior court in Graham's appeal of the ALJ's decision.[4] The court correctly applied the relevant appellate rule when fashioning its attorney's fees award of 20% of the State's actual reasonable attorney's fees incurred in successfully defending the appeal.[5] And contrary to Graham's argument to us, he is not a constitutional claimant statutorily entitled to either an attorney's fees award in his favor[6] or protection against an adverse attorney's fees award;[7] it is clear from the record that, even if his claims could be construed as constitutional, his economic incentive to bring his claims negates applying the statute.[8]

---

[4]     *See* Alaska R. App. P. 601(b) (providing for appeal to superior court from administrative agency's final decision).

[5]     *See* Alaska R. App. P. 508(e)(4) (providing in appeal under Rule 601 "the court shall award the prevailing party 20% of its actual attorney's fees that were necessarily incurred," with certain exceptions).

[6]     *See* AS 09.60.010(c)(1), (d)(2) (providing in civil action or appeal involving constitutional right that attorney's fees shall be awarded to party claiming constitutional right who "prevailed in asserting the right" but "only if the claimant did not have sufficient economic incentive to bring the suit, regardless of the constitutional claims involved").

[7]     *See* AS 09.60.010(c)(2) (providing in civil action or appeal involving constitutional right that attorney's fees may not be awarded against party claiming constitutional right and in favor of opposing party "if the claimant . . . did not prevail in asserting the right . . . and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved").

[8]     *Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 281-82 (Alaska 2015) ("A litigant has sufficient economic incentive to bring a claim when it is

(continued...)

The superior court's decision affirming the ALJ's final agency decision is AFFIRMED, and the superior court's award of attorney's fees in favor of the Division and against Graham is AFFIRMED.

---

[8]    (...continued)
brought primarily to advance the litigant's direct economic interest, regardless of the nature of the claim.").

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
## THIRD JUDICIAL DISTRICT AT ANCHORAGE

JEFF GRAHAM, )
)
          Appellant, )
) Case No. 3AN-18-09475 CI
     v. )
)
STATE OF ALASKA, DIVISION OF )
RETIREMENT & BENEFITS, )
)
          Appellee. )
)

## DECISION RE: ADMINISTRATIVE APPEAL

Before this court is Jeff Graham's appeal of a September 5, 2018 Administrative Law Judge (ALJ) final decision. Graham is a firefighter who sued the Municipality of Anchorage (MOA) after the MOA refused to promote him in 2012. In 2017, a jury found in Graham's favor, and awarded him $100,000 for past lost wages and benefits, $450,000 for future lost wages and benefits, and another smaller amount for taxes and other damages/fees that are not at issue in this appeal. The MOA is a participating employer under the State's Public Employees' Retirement System (PERS), and Graham wanted the MOA to make deductions from his award so the State Division of Retirement and Benefits (Division) could credit his jury award to his PERS retirement account. The MOA contacted the Division for direction on whether to make the deductions, and the Division essentially said, "No, don't deduct anything for PERS," because in the Division's opinion the jury award was not "compensation." The MOA followed the Division's advice, paid the full $550,000 to Graham, and deducted nothing for PERS.

Graham timely appealed the Division's decision to the ALJ, full briefing

occurred, and, as mentioned above, the ALJ issued his final decision in September 2018. In that briefing Graham argued that the full $550,000 was "compensation," whereas the Division argued that none of it was "compensation." There were also a few other smaller issues. The ALJ agreed with Graham that the $100,000 award for past lost wages and benefits was "compensation," but agreed with the Division that the $450,000 award for future lost wages and benefits was not.

Graham now appeals to this court, arguing that the $450,000 award for future lost wages and benefits is also "compensation" and that this court should require the Division to credit the full $550,000 award to his PERS account. He acknowledges that he should have to pay the "employee's contribution" portion into PERS (about 7.5% of the $550,000), but he argues that the MOA should now have to pay the "employer's contribution," i.e., some other percentage over and above the jury award. Finally, he argues that the $550,000 should be credited as compensation earned during the single year the MOA paid the jury award in 2017, rather than somehow spread the award over the years for which the jury essentially held that the MOA should have promoted him and paid him more.

For purposes of this appeal to this superior court, the Division has abandoned the argument it made to the ALJ that the $100,000 for past wages/benefits is not compensation. Rather, the Division challenges only the forward-looking aspect of the $450,000 award for "future" wages/benefits, by arguing that the statute permits PERS contributions based only on wages "earned." The Division also argues that the MOA should not be ordered to pay for the "employer contribution" because some part of the jury award was for "retirement benefits" and that an additional award would be "double dipping." Finally, the Division argues that the $100,000 (and $450,000, if awarded by this court) should be credited over the years at issue, and to account for them all in just

the year it was paid in a lump sum would artificially impact the "three high years" calculation the Division must conduct and upon which retirement payouts are partially based.[1]

## 1. Standard of Review

At issue in this case are the parties' interpretations of two Alaska Statutes governing PERS. Alaska courts generally "exercise [their] independent judgment when reviewing issues of statutory interpretation."[2] "[W]here . . . the issues to be resolved turn on statutory interpretation, the knowledge and expertise of the agency is not conclusive of the intent of the legislature in passing a statute."[3] When construing statutes, Alaska courts presume "that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous."[4]

## 2. Whether the $450,000 award for future lost wages and benefits is "compensation"

The jury awarded Graham $100,000 for past lost wages and benefits and $450,000 for future lost wages and benefits. As mentioned, the Division has abandoned

---

[1] Graham also appealed the ALJ's extension of some of the administrative process filing deadlines. Graham has expressly abandoned that appeal point, and thus this court does not discuss it.

[2] *Flisock v. State, Div. of Ret. & Benefits*, 818 P.2d 640, 642 (Alaska 1991) (citation omitted).

[3] *Id.* (alteration in original) (quoting *Union Oil Co. v. State, Dep't of Revenue*, 560 P.2d 21, 23 (Alaska 1977)).

[4] *Nelson v. Mun. of Anchorage*, 267 P.3d 636, 642 (Alaska 2011) (quoting *Mech. Contractors of Alaska, Inc. v. State, Dep't of Pub. Safety*, 91 P.3d 240, 248 (Alaska 2004)).

its prior argument that it made to the ALJ that not even the $100,000 for past wages/benefits should be deemed to be "compensation."

The parties agree that whether the $450,000 award is compensation is largely an issue of statutory interpretation. They primarily focus on nine words in a single statute, former AS 39.35.680(8),[5] plus Graham also relies on a phrase in another definition statute, AS 39.35.990(7). The bolded words, below, are the words the parties discuss. The parties agree that interpretation of these two statutes has never been addressed by our Alaska Supreme Court. For analogy purposes, both parties discuss a single Alaska case, *Flisock v. State, Division of Retirement & Benefits*.[6] Finally, Graham discusses a Washington case, *Serres v. Washington Department of Retirement Systems*.[7]

The first statute is former AS 39.35.680(8), which defined "compensation" as:

> the **total remuneration earned** by an employee for personal services rendered to an employer, including employee contributions under AS 39.35.160, cost-of-living differentials only as provided in AS 39.35.675, payments for leave that is actually used by the employee, the amount by which the employee's wages are reduced under AS 39.30.150(c), and any amount deferred under an employer-sponsored deferred compensation plan, **but does not include retirement benefits**, severance pay or other separation bonuses, welfare benefits, per diem, expense allowances, workers' compensation payments, or payments for leave not used by the employee whether those leave payments are scheduled

---

[5]    Former AS 39.35.680(8) (1994).

[6]    818 P.2d 640 (Alaska 1991).

[7]    261 P.3d 173 (Wash. App. 2011).

payments, lump-sum payments, donations, or cash-ins. . . .[8]
(Emphasis added.)

This statute was in place in 1995, which is when Graham was hired, and the parties agree that it is the applicable statute. The legislature revised the statute in 2000 in relevant part by deleting the word "total" in the first sentence.[9]

The second statute at issue is AS 39.35.990(7). This statute was enacted in 2005,[10] and is applicable for employees hired on or after July 1, 2006.[11] Alaska Statute 39.35.990(7) defines compensation as:

> (A) . . .
>
> (i) **the total remuneration** earned by an employee for personal services rendered, including cost-of-living differentials, **as reported on the employee's Federal Income Tax Withholding Statement (Form W-2) from the employer for the calendar year**;
>
> . . . .
>
> (B) **does not include retirement benefits**, severance pay or other separation bonuses, welfare benefits, per diem, expense allowances, workers' compensation payments, **payments for leave not used whether those leave payments are** scheduled payments, lump-sum payments, donations, or **cash-ins**, any remuneration contributed by the employer for or on account of the employee under this plan or under any other qualified or nonqualified employee benefit plan, or any remuneration not specifically included above which would

---

[8] Ch. 6, § 17, SLA 1993.

[9] Ch. 68, § 53, SLA 2000.

[10] Ch. 9, § 122, FSSLA 2005.

[11] *See* AS 39.35.700 (providing AS 39.35.700-.990 "apply only to members first hired on or after July 1, 2006" with certain exceptions).

have been excluded under 26 U.S.C. 3121(a) (Internal Revenue Code) if the employer had remained in the Federal Social Security System . . . . (Emphasis added.)

As to the case law, *Flisock* is a 1991 Alaska case.[12] Flisock was a school employee, and he participated in the State's Teachers' Retirement System (TRS).[13] Prior to retiring, he accumulated 93 days of unused leave over a six-year period, and upon retirement the school district paid him the cash value of his unused leave.[14] Flisock asked the Division to credit that payment to his retirement account, but the Division refused.[15] Flisock appealed to an ALJ, who affirmed the Division's decision.[16] Flisock then appealed to the superior court, which also affirmed the Division's decision.[17] He then appealed to the Alaska Supreme Court.[18] The court applied the TRS statute existing at the time Flisock enrolled in TRS and noted that the statute defined "base salary" (which is used for calculating the retirement benefits) as "any remuneration accrued . . . for professional services rendered during any school year."[19] The court made two important findings: first, that Flisock's unused leave payment was to be deemed as accrued remuneration, but second, that the Division should allocate the leave payment

---

[12]    818 P.2d 640 (Alaska 1991).

[13]    *Id.* at 641.

[14]    *Id.* at 642.

[15]    *Id.*

[16]    *Id.*

[17]    *Id.*

[18]    *Id.*

[19]    *Id.* at 643 (quoting former AS 14.25.220(2) (1969)).

across the six years it was accrued, rather than apply it to just the year it was received.[20] The court therefore reversed and remanded the superior court's decision.[21]

The non-Alaska case, *Serres*, is a 2001 case, and it involves the Washington version of Alaska's PERS.[22] Seattle and King County had merged their employee classification and compensation systems.[23] As part of that merger, King County had to identify and reconcile pay differences that resulted from the merger.[24] King County employees filed two lawsuits against the County: one group of employees sued King County because the County paid another group of employees at a different rate for the same work, and another group of employees sued the County because the County "failed to appropriately adjust their compensation and job classifications."[25] A court consolidated the two cases, and the County eventually settled the consolidated lawsuit and paid the plaintiff-employees.[26]

Serres was one of the plaintiffs in the settled lawsuit. After he retired, he asked the Department to credit his settlement award to his retirement account.[27] The

---

[20] *Id.* at 643-45.

[21] *Id.* at 645.

[22] 261 P.3d 173 (Wash. App. 2011).

[23] *Id.* at 176.

[24] *Id.*

[25] *Id.* at 176-77.

[26] *Id.* at 177.

[27] *Id.* at 178.

Department refused.[28] Serres petitioned for agency review, and the agency found against Serres.[29] He then appealed to the superior court, which held that the settlement payments were "compensation earnable" because it did not matter what motivated the County to make the payments, but rather it mattered what the payment was and what it was based on, i.e., work performed.[30] The superior court therefore reversed the Department's decision.[31]

The Department and King County then appealed to the Washington Court of Appeals. That court agreed with the superior court that the Washington PERS statute defined "compensation earnable" as "salaries or wages earned during a payroll period for personal services."[32] The court relied on dictionary definitions of salary and wages to hold that "settlement awards are 'salary or wages' if they constitute payment for services or labor."[33] The court then determined the nature of the settlement awards by asking "in lieu of what were the settlement awards paid?"[34] The court noted that the legal theories advanced in the earlier lawsuits against King County were based on the argument that King County had not fully paid its employees for their services.[35] The

---

[28]    *Id.*

[29]    *Id.*

[30]    *Id.* at 178-79.

[31]    *Id.* at 179.

[32]    *Id.* at 180 (quoting RCW 41.40.010(8)(a)).

[33]    *Id.*

[34]    *Id.* at 181.

[35]    *Id.*

court also noted that even the settlement agreement characterized the payments as "wages" for W-2 reporting purposes.[36] The court held that the settlement payments were "compensation earnable" because the payments "provided retroactive compensation for services provided by county employees."[37] The court therefore affirmed the superior court.[38]

In this instant case, Graham argues that the controlling phrase in former AS 39.35.680(8) defining compensation is "total remuneration," i.e., past and future lost wages/benefits. Conversely, the Division argues that the controlling words in that same statute are "earned" and "rendered," i.e., past tense, which would thereby exclude the $450,000 the jury awarded for future wages/benefits.

As to Graham's argument, he cites a dictionary definition of "total: of or relating to something in its entirety."[39] Graham also argues that, even though he was hired in 1995 and has elected to apply that iteration of the primary statute at issue (former AS 39.680(8)), a version of another PERS statute (AS 39.35.990(7)) that by its title is applicable to employees hired on/after July 1, 2006 is helpful in understanding what "total remuneration" means. Graham highlights that AS 39.35.990(7) defines compensation as the "total remuneration earned by an employee . . . as reported on the employee's Federal Income Tax Withholding Statement (Form W-2) from the employer for the calendar year." Graham argues that the 2006 statute is in fact what the MOA applied when it reported his $450,000 award as wages on his 2017 W-2 and that his W-2

---

[36]    *Id.*

[37]    *Id.* at 182.

[38]    *Id.* at 183.

[39]    *Total*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993 ed.).

is therefore evidence that the award is part of his "total remuneration."[40]

Graham supports his statutory argument by citing *Flisock* and *Serres*. Graham points to *Flisock* for the proposition that the statute and practices in effect when he was hired determine whether his award is "compensation."[41] He cites *Serres* for the proposition that another jurisdiction with statutes similar to Alaska's PERS statutes considers a W-2 as evidence for determining if a payment should be credited for PERS purposes.[42]

As to the Division's interpretation of the statutes, the Division does not really address Graham's "total" remuneration argument, but rather, as mentioned above, the Division argues that the controlling words in former AS 39.35.680(8) are "earned" and "rendered," i.e., past tense. Under the Division's interpretation, future lost wages would not be compensation because Graham had not "earned" them for services "rendered." In addition, the Division highlights that under former AS 39.35.680(8), "the total remuneration earned by an employee . . . does not include retirement benefits." The Division claims that the $450,000 award "mainly represents lost retirement benefits," but the Division does not provide a record cite for this part of its argument.

As mentioned, neither party spends much time discussing the other party's

---

**40**      Graham makes additional arguments regarding the definition of compensation by comparing former AS 39.35.680(8) (1994) to its current version which is renumbered slightly as AS 39.35.680(9). While the Division relied on the definition of compensation found at AS 39.35.680(9) in its final decision that was then the subject of the ALJ's order, the Division applied former AS 39.35.680(8) in its brief to the ALJ and similarly does not now dispute in this superior court appeal that former AS 39.35.680(8) applies.

**41**      818 P.2d 640, 643-44 (Alaska 1991).

**42**      261 P.3d at 181-82.

argument. Graham, for instance, does not really address whether the verb tense of "earned" and "rendered" matters. Instead, he largely focuses on arguing that the Division applied the wrong version of the statute in its final decision. Conversely, the Division does not explain why the word "total" is included in the statute or what its purpose is. Instead, the Division largely focuses on the fact that the statute explicitly includes and excludes certain types of payments as "compensation."

Both parties are somewhat right and somewhat wrong. Courts must apply all words in a statute, and courts must presume "that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous."[43] As noted, former AS 39.35.680(8) defines compensation as "the total remuneration earned by an employee for personal services rendered." The statute does not end after the phrase "total remuneration." Instead, the statute adds that the total remuneration is "earned by an employee for personal services rendered." The statute also lists certain types of payments that are included as compensation and certain types of payments that are excluded. For example, while the court in *Flisock* held that based on an amendment to former AS 39.35.680(8) a school employee's unused leave payment could be credited to his TRS account, the court noted that former AS 39.35.680(8) explicitly excludes "payments for leave not used by the member, whether those leave payments are scheduled payments, lump-sum payments, donations, or cash-ins."[44] The fact that the statute explicitly excludes certain types of

---

[43] *Nelson v. Mun. of Anchorage*, 267 P.3d 636, 642 (Alaska 2011) (quoting *Mech. Contractors of Alaska, Inc. v. State, Dep't of Pub. Safety*, 91 P.3d 240, 248 (Alaska 2004)).

[44] 818 P.2d at 644-45 (emphasis omitted) (quoting AS 14.25.220(10) and noting "the legislature made similar changes to the [AS 39.35.680(8)] definition of

(continued...)

payments undercuts the argument that "total remuneration" is "of or relating to something in its entirety." The other statute that Graham cites, AS 39.35.990(7), similarly includes and excludes certain types of payments. And, as the Division points out, not all earnings on a W-2 form are necessarily "compensation" under PERS. For example, payments for leave cash-in amounts would be included on a W-2, but AS 39.35.990(7)(B) explicitly excludes leave cash-in amounts as being deemed compensation.

Of the two cases cited by Graham, *Flisock* is helpful to him on this issue. In *Flisock*, the court interpreted "any remuneration" broadly to include an unused leave payment and noted that there was no statutory language explicitly excluding unused leave payments.[45] Here, the statutory language of "total remuneration" is the functional equivalent of "any remuneration." In addition, there is no statutory language explicitly excluding awards of future lost wages.

As for *Serres*, Graham is correct that the Washington court did indeed rely on the fact that the settlement agreement characterized the payments as W-2 wages.[46] But the court noted that this was just one relevant factor, that the formulas for the payments also were based on individualized calculations "related to amounts claimed owed for services provided," and that the settlement judge's order that approved the settlement in the consolidated lawsuit referred to the awards as "back compensation."[47]

---

[44] (...continued)
compensation" when it enacted ch. 137, § 68, SLA 1982).

[45] *Id.* at 643-44.

[46] 261 P.3d at 181.

[47] *Id.* at 180-82.

But equally important in Graham's case is that the *Serres* court held that whether the settlement payments were "compensation earnable" depended "on whether the distributions were 'salaries or wages earned during a payroll period for personal services.' "[48] The court held that the settlement payments clearly "provided retroactive compensation for services provided," which fit the definition of "compensation earnable."[49] But in Graham's case, the $450,000 award does not provide compensation for services already provided. Rather, the award in *Serres* is akin to Graham's $100,000 award for past lost wages/benefits but not his $450,000 award for future lost wages/benefits. As a matter of law, this court cannot interpret the phrase "total remuneration" in isolation, i.e., by ignoring the legislature's use of the past tense of "earned" and/or "rendered," nor can this court interpret those words by ignoring the word "total." There is obviously a conflict here between the applicable phrases. This court finds the Division's argument to be more persuasive, i.e., that in most walks of life and barring some unique employment contract that does not exist in this case, retirement benefits are based on past years in service and dollars earned during those years. That is all past tense. As the Division also correctly argues, Graham might not even choose to continue working for the MOA, or at least not for as many years as the jury assumed when it awarded him $450,000 for future lost wages/benefits. If Graham leaves "early," the jury award for future damages would arguably be a windfall. His interpretation of the PERS statute would then be particularly difficult to reconcile.

There is one last reason that leads this court to agree with the ALJ on this issue. The Division argues that some unknown part of the $450,000 award was not for

---

[48]      *Id.* at 180 (quoting RCW 41.40.010(8)(a)).

[49]      *Id.* at 182.

"lost wages" but rather was for "retirement benefits" and thus that Graham has already received full payment for any and all future retirement benefits, including any PERS contribution. The Division correctly notes that former AS 39.35.680(8) explicitly states that compensation for PERS calculations "does not include retirement benefits." Factually, the Division argues that the $450,000 award "mainly represents lost retirement benefits." Graham in turn does not dispute that the statute includes this language, but he argues that the Division has badly misrepresented the record in several respects, and then he provides record cites of his own that he argues undercut the Division's argument.

This court has reviewed the full record on file with this court, including but not limited to all the specific cites provided by Graham. At trial, both Graham and the MOA presented experts, both experts calculated damages, and both experts' calculations included their estimates for retirement benefits based on future lost wages. The experts' numbers were very different from each other: Graham's expert estimated Graham's future lost wages at $525,000 and his PERS benefits at $1.1 million, whereas the MOA's expert estimated future lost wages at $30,961 and future lost PERS benefits at $110,630. The jury apparently wholly adopted none of these numbers. Rather, the jury's special verdict form shows that the jury awarded Graham $100,000 for "lost wages and benefits before July 2017" and $450,000 for "future lost wages and benefits after July 2017." Thus, the evidence before this court is that the jury considered and awarded some amount for retirement benefits, that the award may or may not have included PERS benefits, and that the record does not contain sufficient facts to now establish in this administrative appeal what the jury was thinking.[50] This court has considered this

---

[50] The Division previously filed a motion with this court to supplement the record with, among other things, Jury Instruction #37 that "[t]he second item of
(continued...)

ambiguity in the jury award vis-a-vis the very clear language of former AS 39.35.680(8) that explicitly states that PERS calculations "do[] not include retirement benefits." This court finds at least minimal support for the conclusion that the jury included this PERS issue in their consideration and/or award, and no support for the conclusion that the jury did not include this PERS issue in their consideration and/or award. In sum, this is another reason why the $450,000 awarded to Graham for future lost wages and benefits is not PERS-eligible.[51]

For the reasons stated above, this court AFFIRMS the ALJ's holding on this issue. Accordingly, the remaining two issues below apply only to the $100,000 award for past lost wages and benefits.

3. **Whether the Division must credit the $100,000 award to the pay period in which Graham received it, or among the approximately five pay periods that he would have earned the lost wages/benefits**

The second of three issues is Graham's argument that this court should order the Division to credit his $100,000 award to 2017, i.e., the year the MOA paid him the full amount of the jury award. Conversely, the Division argues that his award should

---

[50] (...continued)
economic loss claimed by . . . Graham are future loss of earnings from date of trial until his retirement . . . and a future loss of PERS retirement benefits due to his non-promotion by MOA." Graham opposed, and this court denied the Division's motion on May 30, 2019. Even now considering that jury instruction does not resolve this issue, but merely reinforces that we will never know how the jury reached its decision. This court also reserved the issue of Graham's request for an award of attorney fees he incurred in opposing the Division's motion. This court hereby DENIES that request.

[51] This court notes the inconsistency in the Division's position that it is not appealing the ALJ's finding that the $100,000 for past wages/benefits is to be credited to Graham for PERS purposes, even while the Division argues in this appeal that the statute prohibits any "retirement benefits" from being applied to the PERS calculation. This court is not, however, opening this issue sua sponte.

be allocated over 2012-2017, i.e., the approximately five years he would have earned those lost wages if the MOA had not breached the employment contract. PERS benefits are typically based in part on the employee's "high three" years of pay. The ALJ held that the Division's interpretation of the statute was correct. Graham appeals. For the reasons stated below, this court AFFIRMS the ALJ's decision on this issue.

At issue is again the interpretation of the same Alaska Statutes quoted in the prior section. First, former AS 39.35.680(4) defines "average monthly compensation" as:

> the result obtained by dividing the compensation earned by an employee during a considered period by the number of months . . . **for which compensation was earned**; the considered period consists of the three consecutive payroll years during the period of credited service that yields the highest average . . . .[52] (Emphasis added.)

Section (8) of that same former AS 39.35.680 defines "compensation" as "**the total remuneration** earned by an employee for personal services rendered to an employer" (emphasis added). Finally, AS 39.35.990(7)(A)(i) — which is applicable for employees hired after July 1, 2006[53] but arguably helpful to this instant discussion — defines compensation as:

> **the total remuneration** earned by an employee for personal services rendered, including cost-of-living differentials, **as reported on the employee's Federal Income Tax Withholding Statement (Form W-2) from the employer for the calendar year** . . . . (Emphasis added.)

Graham relies on AS 39.35.990(7) to argue that because his W-2 represents

---

⁵² Former AS 39.35.680(4) (1994).

⁵³ *See* AS 39.35.700 (providing AS 39.35.700-.990 "apply only to members first hired on or after July 1, 2006" with certain exceptions).

his total remuneration, his W-2 should be dispositive for this accounting issue. Graham acknowledges that the jury award for past lost wages/benefits covers from when he was not promoted in 2012 up until the trial in July 2017. If Graham had been promoted in 2012, the Division would have credited his wages to each of the pay periods in which he had earned them. The obverse is also true: had the MOA promoted him in 2012 and thereafter paid him each month per his promotion, under no circumstances presented in this case would he have ever been paid wages in a $100,000 lump sum.

As to Graham's W-2 argument and reliance upon AS 39.35.990(7), *Flisock* is instructive here, too, but this time it cuts against Graham. Like Graham, Flisock also received a lump sum payment (for six years of unused leave).[54] The court held that the leave payment should be allocated among the years that the leave had actually accrued, rather than the single year when he received the lump sum payment.[55] The court came to this conclusion because Flisock had actually rendered his services over those multiple years.[56] Though *Flisock* involved TRS rather than PERS, the same reasoning applies here. According to former AS 39.35.680(4) that defines "average monthly compensation" for calculating PERS retirement benefits, average monthly compensation is "the result obtained by dividing the compensation earned by an employee during a considered period by the number of months . . . **for which compensation was earned**; the considered period consists of the three consecutive payroll years during the period of credited service that yields the highest average" (emphasis added). The jury award was for five years of past lost wages/benefits and that is how the ALJ and now this court

---

[54]     *Flisock v. State, Div. of Ret. & Benefits*, 818 P.2d 640, 644 (Alaska 1991).

[55]     *Id.*

[56]     *Id.*

are interpreting the statute.

Based on the above, this court hereby AFFIRMS the ALJ's holding on this second issue, including the ALJ's instructions to the Division that the Division allocate the $100,000 per this finding.

**4.      Paying the employer's contribution to PERS**

The last issue is whether the MOA must pay the PERS "employer's contribution" on the $100,000 (i.e., over and above the jury award the MOA has now paid), or whether Graham must pay that from his share of the jury award. The parties agree that under normal circumstances both the employer and employee contribute to PERS. The parties also agree that here, Graham must pay the "employee's" share, whether from the jury award or any other current personal funds of his choice. But the parties disagree on whether — given this unique situation of the jury award arguably already awarding Graham for past wages and retirement benefits and the MOA having already paid that award to Graham — the MOA or Graham now must pay the employer's contribution.

In this appeal, the Division agrees with the ALJ's conclusion "that the jury has already given Graham all of the money necessary to either fund his participation in [PERS] or to invest in some other vehicle." Conversely, Graham argues that there is nothing in the record establishing that the jury gave him all of the money necessary to fund his participation in PERS. As mentioned above in Section 2 of this court's order, both parties' experts testified about their estimates for lost retirement benefits, their numbers were far apart, the jury's award included past lost wages and benefits, but the record does not include any facts that would permit the ALJ or now this court to determine how the jury reached its final award. The jury may or may not have included in their award an amount they deemed sufficient to fund both the MOA's and Graham's

share of PERS.  The ALJ did not and could not know the answer, nor does or can this court.  A remand to the ALJ will not help.  This court, now acting as an appellate court, cannot reopen the jury case and direct the jury to answer further special interrogatories.  Accordingly, the ALJ's decision on this issue is AFFIRMED.

**5.    Conclusion**

For the reasons stated above, this court AFFIRMS all parts of the ALJ's September 5, 2018 final decision.

DATED at Anchorage, Alaska this 15th day of January, 2020.

/s/
Gregory Miller, Superior Court Judge